### RABBIT CREEK OIL CO. v. SHELL PETROLEUM CORPORATION.

#### No. 8001.

Court of Civil Appeals of Texas. Austin.

Nov. 15, 1933.*

*Appellant's motion for rehearing was, on December 30, 1933, dismissed; and on the same date appellant's motion to dismiss the appeal was submitted and granted, and the judgment of affirmance entered in the minutes of this court on November 15, 1933, was, on December 30, 1933, set aside; and the appeal in this cause dismissed.

Dan Moody, of Austin, for appellant.

M. J. Dolan and H. M. Kisten, both of Houston, for appellee.

BLAIR, Justice.

This suit was instituted by appellee Shell Petroleum Company against the railroad commission of Texas and appellant Rabbit Creek Oil Company, to set aside an order of the commission granting appellant a permit to drill an oil well on its certain 1½-acre tract of land in Gregg county; and for a temporary injunction to restrain the drilling of the well pending a trial of the case on its merits. The injunction was granted after notice and hearing; hence this appeal by appellant Rabbit Creek Oil Company from that order.

The court issued the writ of injunction because the application for the permit to drill the well was granted without notice to appellee, an adjacent lessee, as required by rule 37 of the railroad commission and the amendments thereto; and because the order granting the permit was unreasonable, unjust, and arbitrary. With regard to the matter of notice, appellee alleged and proved on the injunction hearing the following facts:

On September 14, 1931, L. C. McBride owned the leasehold estate in a certain 7½-acre tract of land in Gregg county, on which he obtained permission from the commission to drill an oil well. Subsequent to the drilling and completion of the well as a producer, on February 25, 1932, the railroad commission amended rule 37 to read as follows: "Rule 37, adopted November 26, 1919, is hereby amended in so far as it applies to the East Texas Field so as to hereafter read as fol-

lows: 'No well shall hereafter be drilled for oil or gas at any point less than six hundred and sixty (660) feet from any drilling or completed well; and no well shall hereafter be drilled for oil or gas at any point less than three hundred and thirty (330) feet from any property or division line; provided, however, the Commission, in order to prevent waste or to protect vested rights, will, after hearing, grant exceptions permitting drilling within a less or shorter distance than hereinabove prescribed, upon application duly filed fully stating the facts, notice of such application and hearing having been first given to all adjacent lessees affected thereby; provided, that if all adjacent lessees affected thereby waive in writing, notice of hearing on or objection to granting of said application, the Commission may proceed to determine such application without hearing.'"

On April 11, 1932, C. L. McBride organized the appellant Rabbit Creek Oil Company and obtained a charter incorporating it with a capital stock of $1,000, divided into 10 shares of $100 each, of which L. C. McBride owned 8, and Mrs. A. Bethard and Roberta Mullenix, employees of L. C. McBride, each owned 1 share. On April 19, 1932, L. C. McBride conveyed the 1½-acre tract of land in question to Rabbit Creek Oil Company by warranty deed. On November 22, 1932, Rabbit Creek Oil Company filed an application with the commission for a permit to drill an oil well on the 1½-acre tract at a point 347 feet east of the west boundary line of said tract, and at a point from 50 to 60 feet from each the north and south boundary lines of said 1½-acre tract, and a hearing was set for December 20, 1932. Appellee was the owner of the adjoining north and south leases, and it and all adjacent lessees were notified of the hearing; but no one appeared at the time set for the hearing. Thereafter the chief deputy supervisor of the oil and gas division of the railroad commission, whose duty it was to hear such applications, verbally recommended that the commission deny the application, which it did on January 6, 1933; and appellee was notified of this order. Thereafter, on January 31, 1933, the railroad commission again amended rule 37, as amended on February 25, 1932, by adding thereto the following proviso: "And, provided further that in cases of forced offsets the Commission may grant exceptions without waivers or hearing when it is evident that the wells desired are necessary to protect the properties on which it is proposed to drill them."

Subsequent to this amendment, on May 4, 1933, the attorney for the Rabbit Creek Oil Company, without filing any motion to that effect, verbally requested the supervisor to reconsider the application theretofore filed on November 22, 1932, and denied January 6, 1933, which he refused to do. The supervisor was then requested to present the former application and all papers filed to one of the commissioners, which he and the attorney for appellant did on May 4, 1933. No notices of this hearing were given appellee or any adjacent lessees, and no testimony was offered at the hearing by any witness. The former application and the papers filed therewith were presented to the commissioner, who, after examining them, took them to the other commissioners, and, after a conference with them, the permit was issued and dated May 4, 1933, and read in part as follows: "The application of Rabbit Creek Oil Company for an exception under the provision of Rule No. 37, coming on for hearing on this 4th day of May, 1933, by the Railroad Commission of Texas, and it appearing that the petition shows good cause; that no injustice will be done by the granting of such exception, and that the same should be granted for the protection of vested rights. * * *"

Appellee first learned of this order granting the permit to drill the well on June 7, 1933, and on June 14, 1933, filed a motion for rehearing with the commission, which was presented and overruled on the same date; and thereafter appellee instituted this suit for the purposes above stated.

The evidence on the hearing of the injunction further showed that no one appeared at the hearing set for December 20, 1932, and on January 6, 1933, the commission issued its order denying the permit. Appellant filed no motion for a rehearing; nor did it appeal from the decision of the commission denying the permit to drill the well. Nothing else seems to have been done with regard to the application until May 4, 1933, when the commission entered its order granting appellant a permit to drill the well under the circumstances above stated.

Appellee contended, and the trial court concluded, that the railroad commission definitely and finally ruled upon appellant's application set for December 20, 1932, and on January 6, 1933, rendered its final judgment denying the application for a permit to drill the well. That it was the duty of appellant to either file a motion for a rehearing or to appeal from such final order of the commission; and that since appellant took no such action, or any action whatever until May 4, 1933, almost four months after such final order denying the permit to drill the well, and that since appellant merely asked for a reconsideration of its former application for the permit without change, or without setting up any new ground for the permit, appellee was entitled to notice of such further proceedings and hearing.

Appellant contends that the notice given of the original filing of the application was sufficient to support the action of the commission on May 4, 1933, under the rule that after jurisdiction has attached the party has no right to demand notice of further proceed-

ings, but must take notice of all papers thereafter filed. We are clear in the view that that rule had no application to this case. The railroad commission has no definite terms at which it sits and hears applications for permits to drill wells, but is a continuing body; and we are of the opinion that, when the commission issued its order of January 6, 1933, denying the permit, any further action or hearing on the part of the commission to change its order could not be had except after notice to appellee of such further action or hearing.

We find no case discussing the specific question here presented, but justice requires that appellee, who was materially affected by the order granting the permit to drill the well, should have had notice of the reconsideration of the application and hearing under the facts and circumstances above detailed. We think the question presented is somewhat analogous to and controlled by the well-settled rule that, where there has been a final judgment dismissing a plaintiff's cause of action, and the term at which such judgment was rendered has ended, the defendant should be given reasonable notice of the motion to set aside the judgment of dismissal and to reinstate the case. McAllen v. Crafts (Tex. Civ. App.) 166 S. W. 3; Coffee v. Black, 50 Tex. 117; De Witt v. Monroe, 20 Tex. 289. And since the application for the permit to drill the well was granted without notice to appellee, the order of the commission is invalid, and the temporary injunction restraining the drilling of the well was properly granted.

Appellant contends, however, that notice is not jurisdictional to an entry of an order granting an exception to rule 37; and that notice of the application and hearing for the permit to drill the well in question as an exception to rule 37 was therefore not necessary. We interpret rule 37 and the amendments thereto, as above quoted, to require notice to all adjacent lessees of any application and hearing for a permit to drill a well as an exception to the rule, except "in cases of forced offset * * * when it is evident that the wells desired are necessary to protect the properties on which it is proposed to drill them," as provided in the January 31, 1933, amendment to rule 37. But neither appellant's application for the permit nor the order of the commission of May 4, 1933, indicates that the permit was granted as a forced offset to protect the property involved. The application was filed before the January 31, 1933, amendment was ordered by the commission, and it was in no way amended setting up a case of forced offset. The evidence before the commission on January 6, 1933, when it refused the permit, and on May 4, 1933, when it granted the permit, was obviously the same; and the order of the commission shows that it did not consider the well as a "forced offset" well, but as a well "for the protection of vested rights"; and in which case rule 37 provides that notice of an application and hearing for such a well shall be given to all adjacent lessees. The meaning of the term "forced offsets," as used in the January 31, 1933, amendment to rule 37, is not clear; but, whatever the intended meaning of the term, the order of the commission shows that the well in question was not granted as a forced offset well.

Appellant further contends that, if it should be held that notice of its application and hearing for the permit to drill the well was jurisdictional or necessary, then rule 37 requiring notice is void under the due process clauses of both the Federal and Texas Constitutions, because it fails to require notice to owners of the fee to adjacent lands, but only requires notice to adjacent lessees.

This court held rule 37 to be reasonable, enforceable, and constitutional in the cases of Railroad Comm. v. Bass, 10 S.W.(2d) 586, and Danciger Oil & Refining Co. v. Railroad Comm., 49 S.W.(2d) 837, and in the case of Magnolia Petroleum Co. v. Edgar, 62 S.W.(2d) 359, 361, held as follows: "The statute (article 6036a, Vernon's Ann. Civ. St. [Acts 1929, 41st Leg. p. 694, c. 313, § 5]) requires ten days' notice on an application to drill a well, such notice is to be given 'in the manner and form prescribed by the Commission.' The statute itself does not undertake to designate to whom such notice is to be given nor in what form."

Section 6 of the same article (Vernon's Ann. Civ. St. art. 6036b) provides for an appeal from such an order by any "party at interest," and these two sections, when construed together, may be fairly interpreted as showing the legislative intent to require notice of the application and hearing for a permit to drill an oil well as an exception to rule 37, to any "party at interest," which would include adjacent landowners if it should be shown that they were parties at interest to a particular application. The statute is read into rule 37, and the mere fact that it did not specifically provide for notice to adjacent landowners is not material. If the statute does require notice to adjacent landowners, then appellant's permit is condemned, because no one was given notice of the application and hearing. But rule 37 is not unconstitutional because it failed to provide for notice to adjacent landowners. The rule deals with the practical matter of giving notice to the party most vitally interested in the drilling of a well as an exception to the rule. Exceptions are only necessary after the particular field has been proved. The adjacent lessees have the control and the responsibility of developing their respective leases. They are charged with the obligation of drilling offset wells. Their interest also requires them to procure all the oil possible under their leases, and the lessees' interest in the oil is greater

than that of the owner of the fee, who usually receives only one-eighth of the oil as royalty. Royalty interests are often sold by the owners of the fee to numerous purchasers, resident as well as nonresident, and to whom in many instances notice of an application and hearing for the permit could not be given. If it should occur that an adjacent owner has developed or intends to develop his own land, then the commission can give him notice. The commission is required to permit the development of proven fields in accordance with the conservation laws, and as a practical proposition notice to the adjacent lessees in most cases should be and is sufficient.

■ Appellee further alleged that the order granting the permit to drill the well was unreasonable, unjust, and arbitrary, because in violation and contravention of articles 6014 and 6029, as amended by Acts 1932, 42d Leg., 4th C. S., p. 3, c. 2, §§ 1 and 7 (Vernon's Ann. Civ. St. arts. 6014, 6029), in that the drilling of the well on the appellant's 1½-acre tract would cause waste, since appellee would be compelled to drill two offset wells on its north and south adjacent leases, and that the drilling of the three wells in the particular area would result in dissipating gas pressure, in unnecessary concentration of wells, in causing all wells to go on the pump sooner, and cause a premature abandonment of the wells, and would cause coning and water encroachment, and other irreparable injury and damages to appellee as an adjacent lessee. Appellee's testimony tended to establish the substance of these allegations. Appellant's testimony admitted, or did not contradict the fact, that, if the permit were granted, appellee would be required to drill two offset wells at a cost of some $25,000; and by its answer herein appellant offered to waive any right of protest to the drilling of these offset wells. Appellant's testimony on the injunction hearing further showed that the 1½-acre tract was being drained to some extent by appellee's and other wells on adjacent leases; and that while the drilling of the three wells might cause the injury and damages alleged, and proved by the testimony of appellee's witnesses, but as to whether same would occur was doubtful. If appellee had been notified of the hearing before the commission, and if the offer to waive any right of protest against appellee drilling offset wells, and testimony had been offered showing a conflict as to whether appellee would suffer the injury and damages alleged, then the order of the commission should be sustained under the settled rules that the commission is the agency of the government in which is vested the power and authority to administer the conservation laws, and to determine the facts and grant or refuse a permit to drill a well; and that the courts on appeal from the order of the commission will not consider the expediency or wisdom

of the order or whether on like or similar testimony the courts would have made a similar or contrary ruling. Railroad Comm. v. H. & T. C. R. Co., 90 Tex. 340, 38 S. W. 750; Railroad Comm. v. Rau (Tex. Civ. App.) 45 S.W.(2d) 413; Railroad Comm. v. Bass (Tex. Civ. App.) 10 S.W.(2d) 586; Texas Motor Coaches v. Railroad Comm. (Tex. Civ. App.) 41 S.W.(2d) 1074; Railroad Comm. v. Shupee (Tex. Civ. App.) 57 S.W.(2d) 295. But such is not the case here as shown by the undisputed evidence. Appellant's application for the permit did not waive any right of appellant to protest the drilling of two offset wells by appellee; nor was there any testimony offered which showed what the effect of drilling the three wells would have upon this proven field. The evidence was undisputed that L. C. McBride owned the lease on the 7½-acre tract out of which the 1½-acre tract was carved after a well had been completed on the 7½-acre tract; that the map accompanying the application for the permit on the 1½-acre tract, though incorrect as to some of the locations of the drainage wells complained of, showed that adjustments as exceptions to rule 37 had been made between the entire 7½-acre tract and the adjacent leases. Neither the application for the permit for the well on the 1½-acre tract, nor the affidavit as to drainage attached to the application, which together with the map was all the evidence before the commission on either January 6, 1933, when it refused the permit, or on May 4, 1933, when it granted the permit, showed any change of condition in the area as theretofore adjusted. The evidence is also undisputed that, after the well on the 7½-acre tract was completed as an exception to rule 37, and in accordance with the adjustments of the area with regard to wells on adjacent leases, L. C. McBride organized the appellant corporation, and became the owner of $800 of its $1,000 capital stock, and there was neither allegation in the application on May 4, 1933, nor proof in support of it, that the former adjustments and exceptions were not fair and reasonable as to the entire 7½-acre tract. It is true that one of the commissioners testified on the injunction hearing that the commission would have granted the permit whether the 1½-acre tract was considered alone or as a part of the 7½-acre tract; but, as above pointed out, the application in question was not for an exception with regard to the entire 7½-acre tract, and there was no evidence before the commission as to whether the drilling of the three wells, one on the 1½-acre tract and one each on the north and south adjacent leases as offsets, would either cause or not cause waste within the meaning of that term as used in the aforementioned conservation statutes. Rule 37, and particularly the statutes, require the commission to ascertain the facts with respect to waste as that term is used in the statutes before a permit to drill

a well as an exception to rule 37 is granted. These duties are mandatory under the statutes, and, until the commission has ascertained the facts prescribed by these statutes as to waste, it cannot grant a permit to drill a well as an exception to rule 37, and its order granting the permit in question without ascertaining such facts is deemed to be unjust, unreasonable, or arbitrary in law. Texas Motor Coaches v. Railroad Comm. (Tex. Civ. App.) 41 S.W.(2d) 1074.

The order appealed from will be affirmed. Affirmed.