**STATE et al. v. BLUE DIAMOND OIL CORPORATION et al.**

No. 8247.

Court of Civil Appeals of Texas. Austin.

Nov. 14, 1934.

Jas. V. Allred, Atty. Gen., Edward Clark and A. R. Stout, Asst. Attys. Gen., O'Brien Stevens, Sp. Counsel, of Houston, and Maurice Cheek, Sp. Counsel, of Fort Worth, for appellants.

Andrews, Kelley, Kurth & Campbell, of Houston, for appellee International & G. N. Ry. Co.

R. S. Shapard, of Dallas, for appellee Texas & P. Ry. Co.

Adair Dyer, of Dallas, for appellee St. Louis & S. W. Ry. Co.

Lee, Porter & Latham, of Longview, Fred Upchurch, of Austin, Harrell & Adams, of Dallas, A. M. Felts, of Austin, Mayfield & Grisham, of Tyler, for other appellees.

McCLENDON, Chief Justice.

Appeal by the state, railroad commission, Attorney General, and other officials from two interlocutory injunctive orders of the Ninety Eighth judicial district court of Travis county: One temporarily restraining appellants "from enforcing or attempting to enforce, directly or indirectly, the provisions of the Railroad Commission's orders of August 16, 1934, and August 29, 1934, or any similar order, requiring the plaintiffs, or interveners, to obtain tenders from the Railroad Commission before tendering their refined and by-products obtained from crude petroleum oil for shipment over any railroad"; and temporarily restraining certain railroad companies and receivers of railroad companies "from refusing to accept for shipment and from shipping the plaintiffs, or interveners, refined and by-products obtained from crude petroleum oil without the plaintiffs, or interveners, having complied with the terms and provisions of said orders of the Railroad Commission of date August 16, 1934, and August 29, 1934, or any similar order"; the other, sustaining a motion of appellees to dissolve a temporary injunction theretofore granted to appellants restraining appellees from violating the August 29th order.

■ We have reached the conclusion that the involved orders of the commission are void for want of notice and hearing, as required by Vernon's Ann. Civ. St. art. 6036a (Acts 1929, 41st Leg., p. 694, c. 313, § 5). See Rabbit Creek Oil Co. v. Shell Pet. Co. (Tex. Civ. App.) 66 S.W.(2d) 737. And since their purpose is to prevent the illegal production of crude oil, popularly called "hot oil," rendering imperative as early decision of the case as practicable, we will pretermit detailed discussion of the other questions raised, expressing only our conclusions thereon.

The orders were passed under the assumed authority conferred and duty imposed by section 1 of chapter 45, p. 104, Acts 2nd C. S. 43d Leg., 1934 (Vernon's Ann. Civ. St. art. 6049c, § 5) which amended Acts 1931, 1st Called Sess., c. 26, § 5, as amended by Acts 1932, 4th Called Sess., c. 2, § 3, and became effective March 9, 1934. The act was immediately attacked on various constitutional grounds, all of which were overruled by this court in Culver v. Smith, 74 S.W.(2d) 754, application for writ of error in which is now pending in the Supreme Court. Several of the issues now urged as invalidating the orders were urged against the validity of the act, and disposed of so far as concerns this court in Culver v. Smith.

The commission has passed three orders under the act, dated respectively, August 4th, August 16th, and August 29th. This suit was filed August 21st by four of the appellees, who were engaged in refining crude oil in the East Texas oil field, against appellants, attacking the validity of the August 16th order, among other grounds, as being unreasonable, in that as a condition precedent to obtaining a permit, under which alone they could ship or the carriers could receive for shipment crude oil products refined or processed in the East Texas oil field, they must furnish a sworn statement embracing data not within their knowledge and not accessible to them, in regard to the crude oil from which such products were produced. To that extent they averred the order required of them the impossible. A temporary restraining order was granted against appellants pending a hearing upon an application for temporary injunction, which was set for hearing August 28th and reset for September 7th, the date of the orders appealed from. We are inclined to the view that the above objection to the August 16th order was well taken. It was probably apprehension in this regard which prompted

the commission to pass the August 29th order, from which was eliminated the requirement of furnishing data other than that which would be shown from records the refineries were required to keep. August 30th, the commission filed in the same court (later consolidated with this suit) a suit against appellees and others, seeking to enjoin noncompliance with the August 29th order, and were granted ex parte a temporary injunction.

September 4th, appellants filed an answer to a show cause order why the temporary injunction sought in appellee's suit should not be granted, in which they asked dismissal of the suit on the ground that the issues therein had become moot, in that the order of August 29th "amends and supersedes the orders of the Railroad Commission which were attacked in the instant suit, and which eliminates all of the requirements which those two orders made, which, as above set out, were alleged to be objectionable by the plaintiff refiners."

September 7th, appellees filed (1) a supplemental petition, in which they attacked the validity of the August 29th order on various grounds including want of notice and hearing; (2) a motion to dissolve the temporary injunction in appellants' suit; and (3) a plea to abate that suit; the latter (which was overruled) upon the ground that jurisdiction of the subject-matter thereof had already attached in appellants' previously filed suit.

The application of appellees for temporary injunction, and their motion to dissolve the temporary injunction in appellants' suit, were heard together on September 7th, with the result that the two orders appealed from were passed.

█ Appellants urge that the verified allegations of their petition to the effect that the commission order of August 29th was passed after notice and hearing must be taken as true, since there was no verified answer filed by appellees controverting them. The original and supplemental petitions of appellees in their own suit were verified, and specifically alleged that each of the three commission orders (August 4th, 16th, and 29th) was passed without notice or hearing. When the two suits were consolidated and a joint hearing had on appellees' application for temporary injunction in their own suit and motion to dissolve the temporary injunction in appellants' suit, the verified pleadings in each suit were before the court, each constituting in this regard a verified denial of the allegations of the other, thus clearly raising a fact question on the issues of notice and hearing.

█ Appellants rely for notice of hearing of the August 29th order upon an order of the commission passed August 10th. This order related to "Oil and Gas Dockets 108, 120, 123, 124, 125, 126, 128, 129, 132, and 146," and was headed: "Special Order Giving Notice of Hearing on All Oil and Gas Fields in the State of Texas, and Especially the Following Districts and Counties for August 22, 1934." Then follows ten different oil fields in various sections of the state, one of which is designated as "East Texas Field, including Upshur, Gregg, Rusk, Smith, Cherokee, and Anderson Counties, Texas."

We copy in full the portions of the order relative to the subjects designated for consideration:

"At such hearing evidence will be received and a decision will be made as to whether or not existing rules, regulations and orders heretofore adopted and promulgated for the respective pools, counties, fields or districts shall be readopted, revoked, amended or changed, or shall be kept in full force and effect under their present terms and for an additional period, and also what further or additional rules, regulations or orders shall be adopted for the enforcement of or pertaining to the conservation of oil and gas in the State of Texas, including the counties and fields above described.

"At such hearing the Railroad Commission of Texas will also hear evidence and adopt such rules, regulations and orders pursuant to such evidence as may be necessary to carry into effect the various provisions of the Acts of the Fourth Called Session of the Forty-second Legislature, and the Regular Session of the Forty-third Legislature to prevent or lessen physical waste in Texas in the production of crude oil, and to protect the rights of the various producers of said oil and to enforce the orders of said Commission when entered."

This is the same form of order including docket numbers which the commission used prior to March 9, 1934, in executing the powers under prior statutes. The orders of August 4th, 16th, and 29th were entered under docket No. 120. No other form of notice was ever issued by the commission which might have any relation to the involved orders.

Appellees contend that these notices were insufficient to apprise them that the commission would hold a hearing with reference to adopting rules and regulations concerning crude oil products. In this we agree. While

the first quoted paragraph is quite broad in its scope, it is to be observed that the second paragraph refers specifically to acts of the 4th C. S., 42d Legislature, and of Reg. Sess., 43d Legislature, following the old forms used prior to March 9, 1934, without any reference to acts of the 2nd C. S., 43d Legislature, at which was passed the amendment to section 5, upon which alone appellants must rely for authority in the commission to pass rule 11, of the August 4th, 16th, and 29th orders. This act was a new departure in the conservation laws of the state, in that it required records and authorized the commission by rule to require reports relative to the refining and processing of crude oil and the products thereof. Prior thereto the statutes were confined to crude oil in its natural state. Upon reading these notices, worded as they were exactly as those under and referring specifically to prior statutes, it would be natural for one engaged in refining or processing crude oil to assume that they had no relation to his industry, but related solely to powers conferred upon the commission by statutes enacted prior to March, 1934.

■ Appellants contend that the requirement of notice was dispensed with under that portion of Vernon's Ann. Civ. St. art. 6049c, § 7, reading: "The Commission may, without notice, revoke any such rule, regulation or order; and it may, without notice, amend the same, provided the subject matter of the amendment was considered at the hearing made the basis for such rule, regulation or order. The renewal or extension of any rule, regulation or order shall be based upon a hearing after proper notice."

In so far as the August 29th order was a mere revocation of prior orders, this contention is correct; but the power to amend such orders without notice is conferred only where "the subject matter of the amendment was considered at the hearing made the basis for such rule, regulation or order." This not only was not shown, but was, we think, fairly negatived, as later appears.

■ Independently of the question of notice, the record shows with reasonable certainty, we think, that there was no hearing upon any of the three orders. The secretary of the commission had no knowledge upon the subject. No member of the commission testified, although appellees made a bona fide effort to obtain their voluntary appearance. Mr. Tolar, formerly connected with the oil and gas division of the commission, and for about a year previous to the hearing an attorney for some of the appellee refiners, tes-

tified that he kept a complete file of all notices for commission hearings covering the subjects involved in this suit, and attended most of the hearings of the commission; that he had never received any notice relating to crude oil products; and that: "At the hearings I have attended—and I have attended most of the hearings that have been held on the East Texas field for three years —I have never heard crude oil products, gasoline, kerosene and so forth, I have never heard that mentioned, or I have never heard any testimony offered that it was necessary to require a permit before it could be transported."

Mr. Clark, an Assistant Attorney General, who "was actively engaged in handling the litigation of the Railroad Commission," and who was one of the attorneys for the commission in this particular litigation, testified:

"Q. As a matter of fact there wasn't any hearing held for that order of the 29th, was there? A. Not during the month of August, I don't think there was any hearing held.

"Q. There wasn't any hearing held for the one of the 16th during the month of August? A. Not during the month of August.

"Q. None for the order of the 4th during the month of August, was there? A. I feel sure they were considering some orders along about that time; that in one of those hearings they were considering ways and means or providing ways and means to make practical the orders of the Commission that they had heretofore passed, but I don't know just which ones they were considering."

The clear import of this testimony was to negative any hearing whatever upon the subject of rule 11 in any of the three orders involved. This was one of the grounds upon which the orders were attacked; and it is inconceivable, if any such hearing was held, that it would not have been disclosed through the efforts of counsel representing the respective litigants, either in the records of the commission or in the recollection of some official connected with the commission. Even if the evidence be not sufficient to conclusively establish the negative as regards hearing, it was clearly sufficient to require the commission to make some positive showing upon the subject,—a showing which involved matters necessarily within its knowledge and dependent upon evidence which, if it in fact existed, was readily available to it.

■ Appellees contend that the orders complained of were not valid because not

published as required by section 8a of chapter 165, Gen. Laws, Reg. Sess., 43d Legislature (Vernon's Ann. P. C. art. 1112b, § 8a). The required publication is expressly limited to "any rule or regulation under the power conferred by this Act." The act relates solely to producers of crude oil and their properties, and does not concern the refined or processed products of crude oil, which alone are the subject-matter of this suit.

■ Appellees further contend that the involved orders are invalid in that as to refineries they apply only to those located within the East Texas oil field. In addition to the record picture, we think the unusual conditions existing in that field are of such general publicity as to require judicial knowledge to be taken of them. The record shows, however, that 90 per cent. of the allowable from this field is carried in trunk pipe lines to refineries of major companies located in distant portions of the state, as to which the orders are not effective. If there is a reasonable basis for excluding these refineries, we are strongly inclined to the view that the record does not show it. It is hardly probable, we think, that this question will again arise. In an amendment to section 14, Acts 1931, 1st Called Sess., c. 26, passed by the 3d C. S. 43d Legislature, 1934 (S. B. No. 21, § 1 [Vernon's Ann. Civ. St. art. 6049c, § 14]), effective 90 days after September 25, 1934, it was "provided that any such order, rule or regulation promulgated by the Railroad Commission of Texas with reference to the purchase, transportation, selling or handling of any of the products above enumerated shall apply uniformly over the State of Texas." It is hardly probable that the commission will pass an order contrary to this legislatively declared policy, especially since its operation would be limited to the very brief period intervening before the act becomes effective, even conceding its power to do so. The general principles of law governing this issue are fully and ably discussed in Judge Baugh's opinion in the Danciger Case (Tex. Civ. App.) 49 S. W. (2d) 837.

■ Appellees further contend that there is no warrant in the amendment of section 5, effective March 9, 1934 (Vernon's Ann. Civ. St. art. 6049c, § 5), for the requirement in rule 11 of the involved orders for a permit as a prerequisite to shipments. We overrule this contention. The full text of the amendment is quoted in Culver v. Smith. The commission is given power "to inquire into the * * * transportation, * * * marketing * * * of crude oil." It is made the duty of those "* * * refining, * * * treating, marketing, or processing * * * crude oil" to keep various records regarding the product, including the amount "transported, refined, * * * treated, marketed, or processed," the source from which is obtained the crude oil from which such products are produced, and "the disposition made of same." The commission is given power to require "sworn statements or reports" covering various enumerated matters "including those facts enumerated herein." The commission is also given power to examine the books, records, and plants of the refiners and processers "for the purpose of ascertaining the facts concerning the matters and things hereinabove set forth." This language, to our mind, amply confers the power claimed and sought to be exercised by the commission in this regard.

■ Appellees further contend that "the Railroad Commission of Texas is without authority to regulate the shipment, commerce in and transportation of refined and by-products, or refined or by-products of crude petroleum oil," because these are businesses not affected with a public interest. There is no attempt to regulate these businesses except in the requirement of the character of records they shall keep, the reports they shall make, and the inspections of their records and plants they shall allow. It is not contended that as a conservation measure the state has not the power to regulate the production of crude oil. This power was expressly upheld in the Danciger Case. The act and the rules in question have for their sole purpose the enforcement of laws and regulations affecting such production. That they have proper relation to the subject-matter, and that they are reasonable when reasonably administered, we have no doubt. The question presented bears a close analogy to that involved in measures relative to enforcement of revenue laws, a subject which this court had under consideration in the recent case of Sheppard v. Owl Refining Co. (Tex. Civ. App.) 68 S. W. (2d) 1101. The point seemed so clearly without merit that able counsel in Culver v. Smith admitted "that the crude oil refinery business is one subject to the regulatory provisions of the statute."

Appellees' remaining contentions are fully and ably treated in Judge Blair's opinion in Culver v. Smith, and are overruled upon the authority of that case.

The trial court's judgment is affirmed.

Affirmed.