**SUN OIL CO. et al. v. GILLESPIE.**

No. 8281.

Court of Civil Appeals of Texas. Austin.

June 20, 1935.

Rehearing Denied July 10, 1935.

T. L. Foster, of Dallas, and Powell, Wirtz, Rauhut & Gideon, of Austin, for appellants.

James R. Boyd, of Austin, for appellee.

McCLENDON, Chief Justice.

Appeal by the Sun Oil Company and the Railroad Commission from a final judgment perpetually enjoining the commission from enforcing an order of the latter denying to appellee a permit to drill a third oil well upon an 8.65-acre tract of land in the East Texas oil field as an exception to rule 37 requiring wells to be not less than 660 feet apart, and 330 feet from property line.

The order was attacked on the ground that a 15-acre tract to the east and a 15-acre tract to the south had five producing wells each, or one well to each three acres, whereas, the tract in question had only one well to each 4.325 acres, and the third well sought was essential to prevent undue drainage and discrimination. The 8.65 acres is in the form of a simple trapezoid, the length of its four lines in feet being N. 746; E. 630; S. 842.6; W. 365.3. The 15 acres to the east is in the same form. Its N. line (842 feet) is a pro-

jection of the 8.65 acres' N. line, and its W. line is the latter's E. line. Its E. and S. lines are in feet, respectively, 923.8 and 909.4. A 5-acre strip 133 feet wide, upon which there are no wells, abuts these two tracts on the south, extending the full length (1,734 feet) of their S. lines. The second 15 acres abuts upon this 5 acres, extending along its entire S. line, and having an approximate width of 400 feet. It will thus be seen that these four tracts form a larger trapezoid; the respective lines of which (in feet) are N. 1,588; E. 1,462; S. 1,762; W. 894. The entire area of 43 acres has twelve wells, or one well to each 3.6 acres. Appellee's petition alleged that he had control as receiver of all four tracts. The evidence showed, however, that the southern 15 acres belonged to the Primrose Petroleum Company. The Sun Oil Company (intervener below, and one of the appellants) owns an 82-acre lease, which was developed to the extent of one well to each 8.1 acres, and abuts the northern 15 acres and in part the 8.65 acres on the north. To the west of this tract and bordering the 8.65 acres to the extent of its remaining N. line is another lease (acreage not given) developed to the extent of one well to each 13 acres. Another lease bounding the 43 acres on the west is developed to the extent of one well to each 6.67 acres. Rule 37, as applied to the East Texas field at the time the exception was applied for, was based upon a development of the entire field to a maximum density of one well to each 10 acres, with exceptions only where essential to protect vested rights or prevent waste.

The record does not show the exact condition of the ownership of the minerals in the three tracts in the receivership. It does show, however, that the receiver did not represent the royalty owners, and that the other holdings were in undivided interests in different parties. Why the 5-acre strip had not been developed does not appear. The application was made on behalf of the 8.65 acres as a separate leasehold. Mr. Humphrey, who owned the major interest in all three of the tracts, testified at the commission hearing, in answer to a question by the deputy supervisor as to whether he was "consolidating the two (8.65 and 5 acres) leases," as follows: "No, sir, not at the present time. If I were granted this permit, I had intended trying to do that. So far it has just gotten out of litigation and I have not been able to work out anything satisfactory on it yet."

The following is from the report of the deputy supervisor:

"Mr. Gillespie is Receiver for the F. & M. Drilling Company and operates 28.65 acres composed of the 8.65 acres in question, 15 acres to the east, and the 5 acre strip running across the south end of both the other tracts. At the present time there is some dispute as to the leasehold ownership of the 5 acre tract, and this applicant and those interested with him are attempting to merge the 5 acres into the main tract for development purposes. In that case the location now requested would be an equi-distant offset to Primrose No. 2 and would probably be justified. However, until that arrangement can be made I do not believe the well should be granted.

"I therefore respectfully recommend that the permit be denied."

The hearing was on August 13, 1934, and the report of the deputy supervisor was dated August 14, 1934. August 24, 1934, the commission denied the permit.

August 27, 1934, the receiver filed with the commission what he termed "his original motion for rehearing," alleging: "That the only question involved in this application and rehearing is whether all parties interested in the two tracts of land herein involved will be bound in the granting of this permit, or whether, if the five-acre tract which is a part of the fifteen-acre tract is set apart from the fifteen-acre tract, the owner of the five-acre tract will be entitled to another permit. In this connection the receiver respectfully shows the commission that he is in control of the entire five-acre and fifteen-acre tracts, as well as the eight and fraction-acre tract adjoining it. That he represents all the parties interested in this tract of land, and any act on his part approved by the court in which the receivership is now pending will be binding upon all parties following the decision in the case or cases now pending for the purpose of dividing the five acres from the fifteen acres. The Receiver would further show that no protest or contest has been filed herein by any of the owners interested in these tracts, and that they are not entitled to file such protest or contest regarding this application for the reason that they are fully represented by the receiver and appellant herein, G. L. Gillespie."

■ The record does not show what happened to this motion, other than that the petition alleges that it was overruled.

The jurisdiction of the commission ended when it entered the order denying the application. Its further jurisdiction could not be invoked except upon notice and hearing, as to which the record is silent. Rabbit Creek Oil Co. v. Shell Pet. Co. (Tex. Civ. App.) 66 S.W.(2d) 737. The case presented therefore only concerns the order denying the permit for an additional well on the 8.65 acres as a separate leasehold from the 5 acres. The application placed well No. 3 at 66 feet north of the 5-acre's N. line, and 199 feet N. of its S. line. Primrose well No. 2 was 200 feet S. of the latter line. This location was based upon the offset theory, taking the S. line of the 5 acres as the property line between Primrose 15 acres and the consolidated 8.65 and 5 acres. If the application had been made on behalf of the owners of the two tracts as a unit, and no other factors entered into the situation than the offset theory, there might be some reasonable basis for appellee's contentions. Under the application as made and denied, there was no reasonable basis for granting it. The well applied for would be located just 66 feet north of the 5 acres, whereas the Primrose well was 200 feet south of the 5 acres. Treating the 5 acres as a separate leasehold, the wells on the 8.65 acres and those on the Primrose 15 acres fairly met the offset theory test.

■ Independently, however, of the issue of consolidation, the evidence did not warrant setting aside the commission's order. It negatived the existence of any waste or undue drainage, by reason of the density on the two 15-acre tracts. The only complaint which appellee had, as shown by his own evidence, was that he did not believe he was getting his proper share of the oil as compared with the Primrose; and this on the density theory.

If the validity of this theory were admitted, it would necessarily follow that appellee was getting more than his share of the oil in comparison with the Sun Company and other lessees to the north and west. The disparity in those directions was even greater than toward the east and south.

It will therefore readily be seen that if appellee were accorded a third well as a matter of right upon the density theory, then the lessees to the north and west must in like manner be accorded proportionately the same number of wells. The effect of such a holding would be to require a density throughout the entire field based upon the greatest density in any portion of the field, thereby virtually destroying the rule altogether.

■ We believe that exceptions to the rule should only be granted where necessary to protect some substantial right. This we think is the effect of the holdings of the Supreme Court and of this court. Brown v. Humble O. & R. Co. (Tex. Sup.) 83 S.W.(2d) 935, 944, affirming Humble O. & R. Co. v. Railroad Commission (Tex. Civ. App.) 68 S.W.(2d) 622; Sun Oil Co. v. Railroad Commission (Tex. Civ. App.) 68 S.W.(2d) 609, affirmed (Tex. Com. App.) 84 S.W.(2d) 447; Smith v. Stewart (Tex. Civ. App.) 68 S.W.(2d) 627, affirmed (Tex. Sup.) 83 S.W.(2d) 945; Humble O. & R. Co. v. Railroad Commission (Tex. Civ. App.) 68 S.W.(2d) 625; Railroad Commission v. Bass (Tex. Civ. App.) 10 S.W.(2d) 589.

■ The only proper issue that could be raised under the record showing related to whether appellee was getting his fair share of the oil. From the standpoint of density alone, this was not dependent solely upon the density on leases toward the south and west; but also upon the relative density in all directions. The record wholly fails to show that appellee was not getting his fair proportion, regardless of whether the Primrose was getting more than its fair proportion.

In Brown v. Humble O. & R. Co., above, Mr. Justice Sharp, speaking for the Supreme Court says: "The commission, in order to prevent waste, has the power to limit the rate of flow in the same way that it has the power to regulate spacing. See Champlin Refining Co. v. Corporation Commission, 286 U. S. 210, 52 S. Ct. 559, 76 L. Ed. 1062, 86 A. L. R. 403; Danciger Oil & Refining Co. v. Railroad Commission (Tex. Civ. App.) 49 S.W. (2d) 837. This right to control the rate of flow in order to prevent waste also enables the commission to offset the advantage obtained by one who is given an exception to the spacing rule by limiting his allowable production to the extent necessary to overcome this advantage. In this way the commission, by controlling the oil stored in the common reservoir, is enabled to carry out the dominant purpose of preventing waste, and, at the same time,

permit each owner to enjoy the opportunity fully to realize upon his estate by developing and recovering his oil and gas."

We believe this quotation points the way to relief for any injustice or inequality which may exist by reason of the situation presented in the record. As there pointed out, the commission has power to regulate the flow of wells, and thereby to correct any inequality or injustice; whereas, to attempt such correction by allowing additional wells as exceptions to the spacing rule would lead to interminable confusion. It is certainly not a practical method of dealing with the subject; and the action of the commission in refusing to recognize it cannot be said to be arbitrary, unreasonable, or an abuse of its discretionary powers.

The trial court's judgment is reversed, and judgment is here rendered for appellants.

Reversed and rendered.