## GREER v. RAILROAD COMMISSION OF TEXAS et al.

### No. 8679.

Court of Civil Appeals of Texas. Austin.

April 20, 1938.

Rehearing Denied May 25, 1938.

Felts, Wheeler & Wheeler, of Austin, for appellant.

Wm. McCraw, Atty. Gen., and Albert G. Walker, Asst. Atty. Gen., for appellees.

McCLENDON, Chief Justice.

Greer, holder of a "special commodity carrier permit," issued February 16, 1932, under Vernon's Ann.Civ.St. art. 911b, § 6(d), sued the Railroad Commission and its members (referred to as defendants) to set aside a general order of the Commission passed November 22, 1932, "limiting and restricting transportation of "Oil Field Equipment" under Special Commodity Permit"; and for ancillary relief. Several rail and other carriers intervened; exceptions predicated upon limitation were sustained to their intervention; and they were dismissed from the suit. That phase of the case is brought up in a separate appeal and will not be further noted. The trial was to the court without a jury, and the judgment was in favor of defendants. Greer has appealed.

The order was attacked on two grounds: because, (1) it was passed without notice or hearing, which fact was conceded; and (2) it was unjust, unreasonable, and discriminatory as to Greer.

Defendants interposed a plea in abatement predicated upon the proposition that notice and hearing are not essential to the validity of general orders passed under the Motor Carrier Act (H.B.335, Chap. 277, p. 480, Gen.Laws Reg.Ses. 42nd Leg. (1931); Vernon's Ann.Civ.St. Art. 911b), and that to obtain relief from such orders in the courts it is an essential prerequisite that the aggrieved party first apply to the Commission for redress (Art. 911b, § 20); which Greer had not done. Defenses urged to the merits will be noted later.

■ We have reached the conclusion that notice or hearing were not essential to the validity of the order in question.

■ Sub. (d) of Sec. 6 of Art. 911b, under which Greer's permit issued, specifically provides that such permits shall be granted "upon such terms, conditions and restrictions as the Railroad Commission may deem proper, and [authorizes the Commission] to make rules and regulations governing such operations keeping in mind the protection of the highways and the safety of the traveling public."

Sec. 4(a) of Art. 911b empowers and imposes the duty upon the Commission to prescribe rates and rules and regulations governing motor carriers generally.

Neither of these sections, nor any other provision of the Motor Carrier Act, requires notice or hearing in respect to general orders, rules or regulations of the Commission.

■ Greer invokes Sec. 12(b) of Art. 911b, which expressly provides for notice and hearing. The section reads:

"The Commission at any time after hearing, had, upon notice to the holder of any certificate or permit and after opportunity given such holder to be heard, may by its order revoke, suspend or amend any certificate or permit issued under the provisions of this Act, where in such hearing the Commission shall find that such certificate or permit holder has discontinued operation or has violated, refused or neglected to observe the Commission's lawful orders, rules, rates or regulations or has violated the terms of said certificate or permit; provided, that the holder of such certificate or permit shall have the right of appeal as provided in this Act."

This section manifestly has no relation to general orders of the Commission, affecting alike all carriers or all carriers of a class.

It deals specifically and exclusively with infractions of the law or Commission rules and non user by individual certificate or permit holders. The distinction between orders of this character and general orders is fundamental. The former affect only the individual carrier involved, and are predicated upon some dereliction upon his part. The latter affect all motor carriers or those of a class as well as all competing carriers of every description. The record shows that there were over 200 special commodity carriers operating under permits granted prior to November 22, 1932. There is no compelling inherent reason why notice and hearing should be required as prerequisite

to the validity of general rules and regulations of administrative boards. This is especially true as regards the powers of the Commission in regulating traffic for hire over the public highways of the state. The intimate knowledge possessed by the Commission, both of the condition of the highways and of the traffic burdens to which they are subjected, affords ample basis for dispensing with notice when general regulatory orders are concerned. The wide variety of highway and traffic conditions may call for exceptions as regards given localities, particular classes of commodities or carriers, or even individual carriers. It would not be practical to consider all of these special cases in the promulgation of general regulations. The legislature has provided for notice and hearing upon applications for certificates and permits; and, as already pointed out, for limitations, or restrictions upon, or cancellation of, individual permits. Had the legislature intended that notice and hearing should be had in case of general orders, it could easily have so provided. Its absence in this regard, and its presence in the specifically enumerated cases, clearly indicate that in the former it was not deemed essential.

Cases cited by Greer are those in which notice and hearing are specifically provided in the act. Southwestern Greyhound Lines v. Railroad Commission, 128 Tex. 560, 99 S.W.2d 263, 109 A.L.R. 1235; Railroad Commission v. Red Arrow Freight Lines, Tex.Civ.App., 96 S.W.2d 735; Railroad Commission v. Johnson, Tex.Civ.App., 104 S.W.2d 146.

█ Where the statute requires notice and hearing, such prerequisite is jurisdictional, and its omission renders the order void. Rabbit Creek Oil Co. v. Shell Pet. Corp., Tex.Civ.App., 66 S.W.2d 737; State v. Blue Diamond Oil Corp., Tex.Civ.App., 76 S.W.2d 852; Red Arrow Case, above.

The legislature has provided ample means to protect those aggrieved by "any decision, rate, charge, rule, order, act or regulation adopted by the Commission," through resort to the courts by direct appeal. Art. 911b, § 20. Such right of appeal, however, is granted only "after failing to get relief from the Commission." This language in the section clearly indicates that the legislature had in mind that rules, etc., of the Commission might not operate fairly upon all motor carriers, and to determine such issues the Commission was most suitably

circumstanced. Aggrieved parties were therefore required to seek relief from the Commission, before resort could be had to the courts. Mr. Mark Marshall, Chairman of the Motor Transport Division of the Commission, testified that it was the Commission's construction of the law that it was required to hear and determine applications for such relief, and that such procedure would have been followed in Greer's case had he made the application. All other special commodity permit holders had acquiesced in the order in question.

It is the rule in the Federal Supreme Court that relief against rules of administrative boards will not be granted until after it has been sought of and denied by such boards. Red "C" Oil Mfg. Co. v. Board of Agriculture, 222 U.S. 380, 32 S.Ct. 152, 156, 56 L.Ed. 240; Petersen Baking Co. v. Bryan, 290 U.S. 570, 54 S.Ct. 277, 78 L.Ed. 505, 90 A.L.R. 1285. We quote from the former (Chief Justice White writing):

"We have not attempted to enumerate the objections urged against the rules and regulations adopted by the board of agriculture. The Court below was clearly right when it observed that if, as the complainant alleged, the standard of safety fixed by the board was unreasonably high, or the method of testing oil unsatisfactory, and not such as was in general use, or the regulations in other respects were unjust or oppressive, it should seek relief by applying to the board of agriculture to modify them."

█ This holding is in accord with the general doctrine that one aggrieved by the acts of administrative officials or boards must first exhaust his legal remedies before resort to the courts. See 37 Tex.Jur., p. 918, § 54, from which the following: "A petition which fails to allege that the plaintiff has resorted to the proper school authorities before appealing to the courts is insufficient to confer jurisdiction."

█ Greer's second round of attack upon the order, that it was unjust, unreasonable, and discriminatory as to him, is predicated upon the assertion that he had built up a large business, and expended in excess of $10,000 in equipment and shops, and the effect of the order was largely to impair, if not in fact to destroy, his business. If we have correctly interpreted the various pertinent provisions of the Motor Carrier Act, he should have sought relief from the

deleterious effects of the order before appealing to the courts. We therefore hold that his suit was premature, and defendants' plea in abatement should have been sustained.

Defendants' contention that the trial court properly upheld the order is predicated upon the following propositions:

1. The order was not "unreasonable, arbitrary or void."

2. Greer acquiesced in the order for over a year and ten months and is therefore estopped to question its validity.

3. Greer's permit provided that it was subject to "the further orders of the Commission; and the rules and regulations of the Railroad Commission of Texas, heretofore prescribed or which may be hereafter prescribed under and pursuant to the authority conferred upon it by law." Therefore he consented in advance to the order when made and could not question its validity.

4. The issues in the suit have become moot because in 1934, while the suit was pending, a new permit was issued to Greer embodying the restrictions and limitations of the order in question.

▮ As to the first proposition: As we have already held the order was not void. Whether it was "unreasonable or arbitrary" as to Greer is an issue he must first submit to the Commission.

▮ The second proposition is not sustained by the record which shows that Greer continued to violate the order until he was threatened with criminal prosecution, when he filed this suit.

▮ As to the third proposition: The provisions of the permit as to future rules and regulations of the Commission related to such as were valid; that is those which the Commission had authority to make and were properly so made. The quoted provisions have no effect to preclude Greer from contesting the validity of such future rules and regulations upon any valid ground.

▮ There is no pleading to support the fourth proposition. An agreement in the statement of facts recites that "such restrictions (those embodied in the order in question) were contained in a permit reissued to plaintiff in September, 1934, subsequent to the filing of this suit." There is no evidence that Greer accepted this certificate in lieu of the one issued to him in 1932. The

trial court made no finding upon this subject, but ignored it altogether and based its judgment upholding the order upon defendants' propositions 1 and 3 above. In this state of the record no issue is properly raised as to the effect of the re-issued permit upon the rights of Greer to question the validity of the order.

The trial court's judgment is reversed; defendants' plea in abatement is sustained; and Greer's suit is dismissed without prejudice.

Judgment reversed; defendants' plea in abatement sustained.

On Appellant's Motion for Rehearing.

In challenging our holding that notice of hearing is not essential to general orders of the Commission in highway traffic for hire regulation, appellant cites Southern Ry. Co. v. Virginia, 290 U.S. 190, 54 S.Ct. 148, 78 L.Ed. 260; Chicago etc. Ry. Co. v. Minnesota, 134 U.S. 418, 10 S.Ct. 462, 33 L.Ed. 970; Rabbit Creek Oil Co. v. Shell Pet. Corp., Tex.Civ.App., 66 S.W.2d 737, and Smith v. Wald T. & S. Co., Tex.Civ. App., 97 S.W.2d 991.

In so far as the latter two cases are concerned it need only be pointed out that no general order of the Commission was involved, but specific orders applicable to specific fact situations as governed by general orders and powers of the Commission. In the former case the right to drill an oil well as an exception to the spacing rule (37) was involved; and in the latter the right to a routing amendment to a truck permit. Moreover in each case the governing statute specifically required notice and hearing.

The first cited case involved the validity of a statute of Virginia delegating to the State Highway Commissioner the power and duty to determine the necessity for elimination of grade crossings, and upon determining such necessity to require railroad corporations to provide such grade separation at their own expense. By a divided court the statute was held void for failure to provide either notice or hearing as to the necessity of such grade elimination. The views of the three dissenting Justices follow (page 151 of 54 S.Ct.):

"The Chief Justice, Mr. Justice Stone, and Mr. Justice Cardozo dissent upon the ground that there has been a lawful delegation to the state highway commissioner of the power to declare the need for the abate-

ment of a nuisance through the elimination of grade crossings dangerous to life and limb; that this power may be exercised without notice or a hearing (Chicago, B. & Q. R. Co. v. Nebraska, 170 U.S. 57, 77, 18 S.Ct. 513, 42 L.Ed. 948, 955), provided adequate opportunity is afforded for review in the event that the power is perverted or abused; and that such opportunity has been given by the statutes of Virginia as construed by its highest court."

The Minnesota Case involved the right of judicial review of an order of the Railroad Commission of that state fixing freight rates. The question arose in an appeal (by writ of error) from a final decree of the Supreme Court of that state issuing a peremptory writ of mandamus requiring the railroad companies to put the rates in effect, in which proceeding the railroad companies were denied the right to a hearing upon the alleged confiscatory effect of the rates. The federal Supreme Court (also in a divided opinion) held that the denial of such hearing contravened the due process clause of the Federal Constitution. The majority opinion concludes:

"The issuing of the peremptory writ of mandamus in this case was, therefore, unlawful, because in violation of the constitution of the United States; and it is necessary that the relief administered in favor of the plaintiff in error should be a reversal of the judgment of the supreme court awarding that writ, and an instruction for further proceedings by it not inconsistent with the opinion of this court.

"In view of the opinion delivered by that court, it may be impossible for any further proceedings to be taken other than to dismiss the proceeding for a mandamus, if the court should adhere to its opinion that, under the statute, it cannot investigate judicially the reasonableness of the rates fixed by the commission. Still, the question will be open for review; and the judgment of this court is that the judgment of the supreme court of Minnesota, entered May 4, 1888, awarding a peremptory writ of mandamus in this case, be reversed, and the case be remanded to that court, with an instruction for further proceedings not inconsistent with the opinion of this court."

In a concurring opinion Mr. Justice Miller held:

"In the present case, where an application is made to the Supreme Court of the State to compel the common carriers, namely, the railroad companies, to perform the services which their duty requires them to do for the general public, which is equivalent to establishing by judicial proceeding the reasonableness of the charges fixed by the commission, I think the court has the same right and duty to inquire into the reasonableness of the tariff of rates established by the commission before granting such relief, that it would have if called upon so to do by a bill in chancery."

These decisions have no controlling effect upon the case at bar.

■ It seems quite generally held that due process is satisfied when judicial review of administrative orders is provided. See Alabama Pub. Ser. Comm. v. Mobile Gas Co., 213 Ala. 50, 104 So. 538, 41 A.L.R. 872.

In section 612 of 12 Am.Jur., p. 307, treating the subject of the necessity for notice and hearing in proceedings before "commissions, boards, etc.," it is said:

"The rule that a hearing before judgment or order is not necessary to due process is especially applicable to proceedings before commissioners and boards, such as public utility commissioners, banking superintendents, etc. There is no violation of due process if provision is made for a trial de novo before a court of the issues passed upon by such a commission, for a judicial review of the order, even a review by mandamus, provision for suspending or setting aside the order, for a hearing before the order is put into effect, or for a rehearing upon application."

■ As pointed out in our original opinion, Art. 911b, § 20, specifically accords judicial review to any interested aggrieved party "after failing to get relief from the Commission." By this language application to the Commission for such relief is manifestly made a prerequisite to such review. The case clearly falls within the rule announced in the two decisions of the Federal Supreme Court, and in 37 Tex.Jur., p. 918, cited in our original opinion.

The motion is overruled.

Overruled.