**SMITH et al. v. WALD TRANSFER & STORAGE CO., Inc.**

No. 8485.

Court of Civil Appeals of Texas. Austin.

Oct. 1, 1936.

Rehearing Denied Nov. 4, 1936.

Wm. McCraw, Atty. Gen., and George Kirkpatrick, Asst. Atty. Gen. (David E. Hume, of Eagle Pass, of counsel), for appellants.

Hirsch, Susman & Westheimer, of Houston, for appellee.

McCLENDON, Chief Justice.

This suit brought by appellee is in the nature of an appeal from an order of the Railroad Commission passed December 19, 1934, which set aside an order of the commission passed March 29, 1934, which last-named order granted to appellee a common carrier certificate to operate a line of trucks over certain public highways of Texas in the transportation of interstate freight exclusively; and for ancillary injunctive relief. Upon a trial to the court without a jury, the judgment was in favor of appellee perpetually enjoining appellants (the commission and its members) from interfering with appellee in operating under the order of March 29, 1934. The commission has appealed. Since no conclusions of fact or law were filed or requested, all fact issues are resolved in favor of the judgment.

We have reached the conclusion that the trial court's judgment should be affirmed upon the holding that the commission was without power to set aside its order of March 29, 1934. We therefore pretermit discussion of other issues presented, and confine our statement of the case to this issue.

Appellee had been engaged in the business of transporting freight for hire by motortrucks for many years prior to the first statute, popularly referred to as the Old Law (Acts 1929, 41st Leg., p. 698, c. 314), placing the regulation of such business under the jurisdiction of the Railroad Commission. Under that law appellee obtained and continuously operated under a class B (contract carrier) permit. When the law was amended in 1931 (Acts 42d Leg. p. 480, c. 277, popularly called the New Law [Vernon's Ann.Civ.St. art. 911b, § 1

et seq.; Vernon's Ann.P.C. art. 1690b]), appellee applied for a contract carrier permit to cover only interstate transportation, in which business alone appellee was engaged. This application was denied, whereupon appellee applied for a common carrier permit, likewise to be confined to interstate transportation. After due notice this application was heard. The hearing consumed three days, January 15, 16, and 17, 1934, and the record thereof covers 300 typewritten pages of the statement of facts. Mr. H. L. Smith, representing the Railway General Managers Association, and several other attorneys representing various rail carriers, participated in this hearing and vigorously opposed the application. In addition to this hearing, the commission had held numerous other hearings upon other applications, covering the condition of Texas highways and the uses to which they were subjected. It is to be noted that since the application was to do an interstate business, the commission was "without power to determine the need or convenience" of such commerce, but only "whether the highways over which commerce is sought to be carried, 'are of such type of construction or in such state of repair, or subject to such use as to permit of the use sought to be made by the applicant.'" Railroad Commission v. Greyhound Lines (Tex.Civ.App.) 92 S.W. (2d) 296, 302. The commission found all the facts necessary to support the application, and on March 29, 1934, entered its order granting it. On the same day the director of the Motor-Transportation Division of the commission wrote to appellee notifying it of the granting of the application; and advising that before it would be authorized to operate it would be necessary to deposit the requisite fees for license plates and liability insurance policies. These were forwarded to the commission on March 31, 1935. Nothing further remained to be done except the formal issuance of the certificate and delivery of the license plates. The order was in every respect valid, possessing no vice which would authorize its being set aside even in a direct proceeding for that purpose. Appellants do not controvert this statement in any particular. They assert, however, the right of the commission to set aside the order upon application for a rehearing or new trial under its practice and prescribed rule. This rule, passed August 30, 1933, reads: "It is hereby ordered by the Railroad Commission of Texas that in all orders, judgments and decrees written by the Railroad Commission of Texas, no motion for a new trial shall be filed or entertained unless it is filed within twenty (20) days after such order, judgment, or decree has been rendered and entered of record. It must be filed in writing and signed by the applicant or by his attorney, specifying the grounds on which it is founded. No ground not specified shall be considered by the Commission."

The protestants represented by the attorney for the Railway General Managers Association filed with the Motor-Transport Division of the commission what is styled a motion "for rehearing" and motion "for opportunity to present argument to the Commission wherein its opinion and order granting said application is contrary to the evidence before said Commission and is not supported by evidence before said Commission and is not supported by evidence in the record, nor can it be supported by actual condition upon said highways."

█ The motion was dated April 18, 1934, but the file marks showed that it was received in the department on April 19, 1934, or one day too late under the above rule. The attorney who prepared this motion testified some eighteen months after the occurrence, that he filed the motion on April 18th. If the commission had jurisdiction to entertain such motion, but such jurisdiction was dependent upon its being filed within the prescribed twenty days, we would be constrained to hold in support of the judgment that the trial court was not required as a matter of law to accept the testimony of an interested witness as to his recollection of a transaction which occurred a year and a half before, against the record evidence of the commission, as shown by the file marks on the motion.

No further action was taken in the matter by the commission until October 30, 1934, when a general notice was issued that the commission "will hear oral argument in * * * on November 12, 1934, at 10:00 o'clock a. m. on the following applications:" Then followed a list by docket number and style of eleven applications, among them: "Docket No. 9186—Wald Transfer & Storage Co. for an Interstate Contract Carrier Permit from Galveston and Houston to Dallas, Fort Worth & San Antonio." The notice concluded: "All of the above applications have heretofore been denied by the Commission and oral argument will be heard on motions for rehearing."

Nothing was done under this notice, and on November 28, 1934, another notice was

issued under the same general form for a hearing of oral argument on December 17, 1934, of 25 applications listed as before. This notice, however, did not contain the quoted concluding paragraph of the October 30th notice. In this notice appellee's application was listed in the identical wording of the former notice. These notices, which were signed by each of the commissioners and attested by the official seal, constitute the only official acts of the commission in connection with the matter between the dates of the order of March 29th and the hearing of December 17th. The only hearing that was had was oral argument by the attorney for protestants who filed the motion. Appellee did not appear at the hearing. The December 17th order was originally signed by only two of the commissioners, Chairman Smith and Mr. Thompson. Mr. Smith, shortly thereafter, had his name withdrawn from the order, on the ground that he had signed it through inadvertence along with a number of other orders. On December 24, 1934, he wired appellee's attorney: "Status of Wald Transfer Company same as before issuance of order Saturday stop This is his authority to operate as he has been under Commission's order." Mr. Terrell affixed his signature to the order in lieu of Mr. Smith's. Appellee does not seriously question the validity of the order by reason of this procedure, if it be otherwise valid.

The record shows a number of conversations and some correspondence between appellee's attorney and two members of the commission and the director of the Motor-Transportation Division relating to the hearing of December 17th. We do not regard these conversations and letters as having any material bearing upon the controversy for two reasons: (1) There substance added nothing to the records of the commission; (2) the two notices of hearing, which constitute the only official action of the commission regarding the hearing, are conclusive of what the commission proposed to consider at the hearing.

■ The notices were clearly insufficient to bring in question the order of March 29, 1934, which granted the application for a common carrier certificate. Both notices described the matter to be heard as appellee's application for a contract carrier permit. The October 30th notice further described the application to be heard as having theretofore been denied by the commission, whereas the order of March 29th, which the commission attempted to set aside under these notices, granted the application for a common carrier certificate.

That adequate notice was essential to the order's validity under any theory of the case is not questioned. That neither of these notices was sufficient to authorize action upon the March 29th order is manifest. See State v. Blue Diamond Oil Corporation (Tex.Civ.App.) 76 S.W.(2d) 852.

■ There is another ground upon which the jurisdiction of the commission (granting such jurisdiction, arguendo, and that a motion for new trial was essential thereto) was not properly invoked. The moving party must have a justiciable interest in the controversy. This point was strenuously urged by the commission, and was assumed by this court in the recent case of Railroad Commission v. Red Arrow Freight Lines, 96 S.W.(2d) 735. It was there contended by the commission that since its functions to determine the issue of convenience and necessity of the service, on the one hand, and the issues of condition and uses of the highways, on the other, were severable (citing the Greyhound Lines Case, above, and the supporting federal authorities), and since competing lines have no justiciable interest in the latter, it was essential for competing lines to show their particular interest in the former by way of damage or detriment. We did not discuss the subject because of our holding that the protestants there had shown such interest. That case involved intrastate commerce only, and the commission had authority over the issue of convenience and necessity. Here, by reason of the interstate character of the transportation involved, the commission has no power over that issue, but is confined to the subjects of condition and use of the highways. In those subjects the protestants who filed the motion showed no interest other than that of the public in general. It is therefore clear, we think, that they had no justiciable interest in the subject. See Fisher v. Bartlett (Tex.Civ.App.) 76 S.W. (2d) 535 (error dis.); Id. (Tex.Civ.App.) 88 S.W.(2d) 1068 (error dis.).

■ Independently of the question of notice, however, the December 17th order is void under our above holding that the commission had no power to set aside its order of March 29th.

■ It is not necessary, we think, to enter into a discussion of the proper classifi-

cation of the commission's delegated power to grant or refuse permission to use the public highways for commercial purposes; that is, whether this power is the exercise of a legislative, quasi judicial or purely administrative function. It has been often referred to as quasi judicial. The prerequisite of notice and hearing, which partake of the nature of a judicial function, may properly give it that classification. The ultimate exercise of the vested discretion to determine whether the use and condition of the highways are such as to warrant the added burden which granting the application would impose can hardly be classed as a judicial function, or one which the Legislature could properly delegate to the courts. Judicial review of such orders has been repeatedly held to be confined to questions of a strictly judicial character; whether they are arbitrary or unreasonable, or unjust or discriminatory to the complaining party, and therefore constitute an abuse of the discretion which the Legislature has vested in the commission. Railroad Commission v. Shupee (Tex.Civ.App.) 57 S.W. (2d) 295, affirmed 123 Tex. 521, 73 S.W. (2d) 505.

Rate making is quite generally classed as a legislative function, although notice and hearing are usually prescribed as prerequisites to action therein by commissions created for that purpose. Missouri-Kansas & T. R. Co. v. Railroad Commission (Tex.Civ. App.) 3 S.W.(2d) 489, affirmed Producers' Refining Co. v. Missouri, K. & T. R. Co. (Tex.Com.App.) 13 S.W.(2d) 679. There it was held that orders establishing rates were prospective only in their operation, and once they were made they became final, and the commission had no power over them retrospectively. It might make new orders, but these could operate only in the future, and could not retrospectively annul, modify, or otherwise affect orders previously made. The same conclusion was later announced by the federal Supreme Court regarding rates which the Interstate Commerce Commission had itself promulgated or expressly approved, as distinguished from rates which had only been filed by the carriers. Arizona Grocery Co. v. Atchison, T. & S. Fe R. Co., 284 U.S. 370, 52 S.Ct. 183, 76 L.Ed. 348. In both of these cases the distinction was clearly drawn between the making of rates for the future on the one hand, and, on the other hand, the review of rates already made for the purpose of having them set aside, annulled, or declared unjust, unreasonable, or discriminatory. The latter was held to be a purely judicial function.

The granting of a privilege to use the highways for commercial purposes partakes of the nature of ratemaking to the extent, at least, that its operation is prospective only. An order granting this permission is immediately effective, and the applicant is entitled as a matter of right to operate under it upon compliance with the requirements regarding fees and insurance. Right of review of the order in the courts is expressly given by statute; but this review is not of the commission's delegated discretion, but only to determine whether there has been an arbitrary or unwarranted use of that discretion, or of the commission's powers. The statutes do not attempt to give the commission any character of power of review of its previous orders. The power to make rules for the conduct of its business bears no proper relation to such review.

That an order of the commission denying a permit to drill an oil well as an exception to rule 37 is final and terminates the jurisdiction of the commission was held by this court in Rabbit Creek Oil Co. v. Shell Corporation (Tex.Civ.App.) 66 S.W.(2d) 737 and Sun Oil Co. v. Gillespie (Tex.Civ. App.) 85 S.W.(2d) 652. This same holding was announced by the Supreme Court, and these cases cited with apparent approval in Magnolia P. Co. v. Railroad Commission (Tex.Sup.) 96 S.W.(2d) 273, 275. We quote from the opinion:

"It is well settled that under the general provisions of the law the Railroad Commission acts in a quasi-judicial capacity. See articles 6024, 6025, 6029, 6033, 6036, and 6036a, Vernon's Ann.Civ.St. The Railroad Commission has the power to issue and cause process to be served by its own officers, to enter orders which are final, unless set aside on appeal, and to enforce its judgments which govern valuable property rights. Brown et al. v. Humble Oil & Refining Co. (Tex.Sup.) 83 S.W.(2d) 935, 99 A.L.R. 1107, and authorities cited.

"The order entered by the Railroad Commission on May 7, 1934, denying the permit to drill the three additional wells, was a final order, and its further jurisdiction of that order, under the law, could not be invoked, except upon motion and hearing, which the Court of Civil Appeals found was not had."

It may be urged that this decision is authority for the proposition that the com-

996

mission has the power upon motion, notice, and hearing to set aside, retroactively, its former orders. That question was not before the court in any of these cases, and, so far as we have discovered, it has not been adjudicated in this state. The power of the commission to grant a permit where conditions had changed subsequent to a previous order denying such permit could hardly be seriously questioned. This is essentially different from reviewing its former order and reversing its former final decision upon the same fact situation. There may also be a controlling distinction between refusing and granting a permit. In the former no right could intervene, whereas in the latter the permittee may, subject only to the limited review in the courts, immediately proceed with the exercise of such permit involving financial outlay, great or small, according to the nature of the operation. There is also this distinction between a privilege to use the highways for commercial purposes and a permit to drill for oil on private property; the former involves no vested property interest, whereas the latter does. Whether this distinction would call for a different holding in the respect at issue we do not decide.

We are not here concerned with the power vel non of the commission to set aside its previous order which is either void or voidable by reason of some inherent vice; nor with its power to annul or terminate a permit, prospectively, on account of changes in highway conditions and use. The commission did not purport to act under any of these powers. What it attempted to do was to rehear and reconsider its former final order.

The right of review and therefore the potential jurisdiction of the courts immediately attaches upon the order's becoming final. To hold that the commission still had the right of review upon rehearing, it would be necessary to hold that jurisdiction of the commission and the courts was concurrent. This has been repeatedly denied. Stewart v. Smith (Tex.Sup.) 83 S.W.(2d) 945; Edgar v. Stanolind Oil Co. (Tex.Civ. App.) 90 S.W.(2d) 656; Barnsdall Oil Co. v. Railroad Commission (Tex.Civ.App.) 90 S.W.(2d) 663; McNeny v. Railroad Commission (Tex.Civ.App.) 96 S.W.(2d) 96.

There are also important practical considerations which weigh heavily against reposing in the commission the power to review its final orders passed under its delegated authority to regulate commercial traffic upon the state's highways. The legislative policy as declared in the statutes is to authorize such use where the conditions of the highways admit and use by the general public will not be unreasonably impaired. To the commission is delegated the important function of regulating this commercial use. In exercising this function the commission has to pass upon important questions involving (1) the sufficiency of the highways; (2) the paramount right of the general public; and (3) the subordinate right of commercial carriers. The proper determination of these issues requires investigation, study, deliberation, and a careful weighing of the several considerations involved and the rights of the parties affected. The commission is authorized to act only after notice and hearing; and its final orders presuppose its final deliberate judgment arrived at by exercising a like degree of fairness and impartiality in accomplishing the objectives of the statutes as that imposed upon the courts. If it were given the right thereafter to review and set aside such orders, the administration of this important governmental function would be fraught with uncertainty and inconvenience. There would be no way of knowing with reasonable certainty when the commission's jurisdiction had terminated and its orders had effectively become final. This is fairly illustrated in the instant case. The certificate was granted March 29, 1934. No official action was taken by the commission until October 30, 1934, and it did not pass upon the matter until December 17, 1934. During all of this time appellee was operating under the order with the knowledge and at least tacit consent of the commission. To give validity to the December order would in effect render this operation illegal retroactively. The statutes vest no such authority in the commission expressly; nor do we believe such authority can be fairly deduced from any of the powers delegated to the Commission.

The trial court's judgment is affirmed.