**RAILROAD COMMISSION OF TEXAS et al. v. JOHNSON et al.**

No. 12383.

Court of Civil Appeals of Texas. Dallas.

March 27, 1937.

Rehearing Denied April 24, 1937.

Wm. McCraw, Atty. Gen., and Curtis E. Hill, Ass't Atty. Gen., for appellants.

Rawlings & Sayers and Nelson Scurlock, all of Ft. Worth, and Carl L. Phinney, of Dallas, for appellees.

LOONEY, Justice.

W. A. Johnson, doing business as Johnson Motor Lines, and the Northeast Texas Motor Lines (Inc.) complained of Tom Miller, inspector of the Railroad Commission of Texas, Walton D. Hood its chief law enforcement officer, the Railroad Commission proper, its members and certain designated enforcing officers, seeking both temporary and permanent injunctive relief, restraining defendants individually and as public officials from either directly or indirectly causing the arrest, molestation, or interference with the drivers of trucks belonging to appellees while engaged as common carrier motor carriers transporting property from and into the town of McKinney. The right of plaintiff to serve the town of McKinney, if it existed, was based upon certificate of convenience and necessity No. 2225, issued by the Railroad Commission of Texas; and intervener's right to serve the town of McKinney was by virtue of certificate of convenience and necessity No. 2186 issued by the Railroad Commission. Appellees showed full compliance with all statutory requirements and orders of the commission, that each had large investments in the certificates owned respectively and in the equipment incident thereto, and that each had built up a profitable common carrier business in and out of the town of McKinney; alleging that, notwithstanding these facts, appellants denied the right of appellees to operate as common carriers in and out of McKinney and that on numerous occasions drivers of trucks belonging to appellees were arrested and complaints were filed, charging in effect that they had no right as common carrier motor carriers to transport property into and from the town of McKinney, all of which resulted in a serious interference with their said businesses, inflicted upon them material injuries and damage, and that appellants would continue such course of conduct unless enjoined from interfering with the right of appellees to freely serve the town of McKinney as common carriers.

On the presentation of verified petitions, the court entered restraining orders and set the matter down for hearing. Defendants filed a plea to the jurisdiction of the court, based upon the idea that the proceedings instituted by appellees were in the nature of an appeal from a decision, order, rule, act, or regulation of the Railroad Commission, exclusive jurisdiction of which, by statute, was vested in the district court of Travis county; and subject to this plea, appellants filed a general demurrer and general denial. After overruling the plea to its jurisdiction and the general demurrer, the court granted the prayer for the issuance of a temporary injunction, from which appellants perfected this appeal.

The material portions of the certificates owned respectively by plaintiff and intervener, under which they operated, are as follows: Plaintiff's certificate was No. 2225 issued October 15, 1935, reciting that it was purchased (by plaintiff) from Hardy Transfer & Storage Company, authorizing plaintiff "to operate a motor carrier company over the following public highways of Texas: Highways Nos. ——— from Dallas to Denison via Sherman and McKinney (other towns and stops on the route

and between termini). * * *" Intervener owned certificate No. 2186, issued May 22, 1936, reciting that it was purchased (by intervener) from Mangrum Brothers, authorizing intervener "to operate a motor carrier company over the following public highways of Texas; Highways Nos. ———— from Dallas to Texas-Oklahoma State line via McKinney and Sherman; and from Sherman to Leonard via Whitewright .(other towns and stops on the route between termini). * * *"

The right of appellees to serve the termini and all intermediate towns and stops on the route, with the exception of the town of McKinney, has not been questioned. The record discloses that for some time before and continuously since the effective date of chapter 314, Act of the 41st Legislature, 1929, regulating common carrier motor carrier traffic (effective 90 days after adjournment of Regular Session), and the amendment thereto by an Act of the 42d Legislature, c. 277 (effective June 6, 1931 [Vernon's Ann.Civ.St. art. 911b, § 1 et seq.; Vernon's Ann.P.C. art. 1690b]), appellees and their respective predecessors in ownership of the certificates, operated motor impelled vehicle service over said public highways from the city of Dallas to the city of Denison, serving the termini and all towns and stops on the route, including McKinney, as common carriers for hire without objection or interference by public officials, until Tom B. Miller, inspector of motor transportation, acting on the advice of and as instructed by his superior, to wit, the chief law-enforcing officer and inspector and the director of motor· transportation, of the Railroad Commission of Texas, notified appellees that their certificates did not authorize them to serve the town of McKinney, requesting that they desist, and on their failure to comply, said officers filed criminal charges against plaintiff, followed his loaded motortrucks into his warehouse at McKinney, refusing to permit same to be unloaded, and notified plaintiff that complaints would be filed every time he caught a truck there. The officer testified that, but for the injunction, he would have instituted criminal prosecution against the drivers of appellees' trucks for continuing to operate as common carriers into and out of the town of McKinney.

Appellants' plea to the jurisdiction is based upon the idea that, since it must be presumed that the acts of the agents of the Railroad Commission were performed at the behest of the commission, that the same were tantamount to and in legal effect a decision, rule, order, or regulation of the commission, therefore the suit being in reality a complaint against an order (presumed) of the commission, the district court of Travis county had exclusive jurisdiction, hence the plea should have been sustained and the suit dismissed.

 Although the statute clothes the Railroad Commission with plenary power to supervise and regulate common carrier motor carrier service over the public highways of the state—yet having issued a certificate of convenience and necessity authorizing the owner to operate over a designated route with authority to serve the termini and intermediate towns and points, the commission thereafter could not limit or restrict such right without first giving interested parties reasonable notice and an opportunity to be heard (article 911b, § 12, subd. (b), Vernon's Ann.Civ.St.). This not having been done, the presumption will not be indulged that, the commission had amended the certificates or limited the rights and privileges theretofor granted, simply because its subordinate officers forbade and sought to compel appellees to cease furnishing common carrier service to the town of McKinney. Magnolia Petroleum Co. v. Railroad Commission (Tex.Sup.) 96 S.W.(2d) 273, 274; Smith v. Wald, etc., Co. (Tex.Civ.App.) 97 S.W. (2d) 991. So, we overrule the contention that the trial court erred in denying the plea to its jurisdiction.

██ The material question for our decision is correctly stated in appellants' brief, as follows: "This litigation involves the right of appellees, W. A. Johnson and Northeast Texas Motor Lines, Incorporated, to serve the town of McKinney under the Certificates of Convenience and Necessity owned by them, it being the .contention of appellees that their respective certificates confer upon them respectively such right to serve said town of McKinney and it being the contention of the appellants that the said certificates of Convenience and Necessity did not confer upon the appellees such right." Pursuing this line of thought, and assuming that the certificates owned by appellees did not authorize them to serve the town of McKinney, appellants urge the proposition that the conduct of appellees in transporting property into and from Mc-

Kinney constituted and was a violation of the Criminal Statutes of the state, hence the arrest of the drivers of their trucks being legal and proper, the court was not authorized by injunctive process to shield them from prosecution. Thus, we are brought to the task of construing these certificates.

The record discloses that, in 1921, V. C. Hardy instituted a motor carrier service from Dallas to Denison via McKinney and Sherman, and in 1927 he established a terminal and agency at McKinney. In 1929 the Legislature adopted the motor carrier act, delegating to the Railroad Commission the power to regulate motor carriers·operating on the highways of the state. Under the terms of this act, an operator was required to obtain from the commission a certificate of convenience and necessity, providing that, upon application a motor carrier would be entitled to a certificate authorizing the continuance of service being furnished on February 20, 1929. So, on July 5, 1929, Hardy filed with the commission an application for a certificate of convenience and necessity over the route in question, the affidavit attached to the application showing McKinney to be one of the intermediate towns on the route being served; also an exhibit attached showed all towns and points on the route, including McKinney, and contains a complete schedule of operations over the route. Based upon this application, the Railroad Commission, on August 13, 1929, issued certificate No. 2225 to V. C. Hardy, under the terms of which the owner was authorized to furnish motor carrier service from Dallas to Denison via Sherman (other points and stops on the route and between termini). As provided by statute, this certificate became permanent thirty days after its issuance. As illustrative of the construction the department gave to the cerificate, Mark Marshall, director of the motor transportation division of the Railroad Commission, under date of September 19, 1933, wrote Mockford Motor Lines, of McKinney, that "Certificate No. 2225 issued to Hardy Transfer & Storage Company authorizes one round-trip daily from Dallas to Denison, which includes the operator's right to serve McKinney, it being an intermediate point." Johnson having purchased the certificate, the commission approving the sale October 15, 1935, described the certificate as authorizing service from Dallas to Denison via Sherman and McKinney, and on the same day issued to Johnson a new certificate under same number (2225), describing the route as being from Dallas to Denison via Sherman and McKinney.

Since 1922, W. L. and J. E. Mangrum, doing business under the firm name of Mangrum Brothers, operated the transportation line now owned and operated by Northeast Texas Motor Lines, Inc. (intervener), serving among other points along the route the town of McKinney, and on June 27, 1929, applied to the Railroad Commission for a certificate of convenience and necessity, authorizing the operation of a class A motor carrier service over the route. Certain exhibits constituted a part of the application, among others, a schedule showing a daily service, as follows: "Trucks leave Whitewright, Texas, Terminal daily between hours of 6–8 A. M. going·to Sherman, Denison, Durant, making all intermediate points, also going to Dallas, Texas, making points between (daily except Sundays)." Trucks leaving Dallas Terminal daily between hours 6–9 P. M., arriving in Whitewright from 10 P. M. to 2 A. M. .Making intermediate points (daily except Sundays). Transfer made at Whitewright Terminal for daily distribution to all points on line covered. * * * Also, affidavits show that Mangrum Brothers had transported property for hire over the highways from Dallas to Denison via Sherman on a daily schedule for several years prior to February 20, 1936. On August 7, 1929, the Railroad Commission issued to Mangrum Brothers a temporary certificate of convenience and necessity No. 2186, "authorizing the operation of a motor carrier company on the following schedules over the following public highways of Texas: Highway Nos. —— from Whitewright to Texas-Oklahoma State line via Sherman and Denison, one round-trip daily except on Sundays (other towns and stops on the route and between termini). Whitewright to Dallas via all intermediate points, one round-trip daily, except on Sundays, Whitewright to Leonard via Trenton, one round-trip daily, except on Sundays, * * * as more fully appears in application filed herein." During the month of May, 1936, the commission approved an application made by Mangrum Brothers to sell the certificate and transportation line to Northeast Texas Motor Lines (intervener), to whom the commission issued certificate of convenience and ·necessity under the same number (2186), authorizing said company "to operate a motor carrier company over the following public highways of Texas: Highways Nos. —— from Dallas to Texas-Oklahoma State line via McKinney

and Sherman; and from Sherman to Leonard via Whitewright (other towns and stops on the route between termini). Schedule: Daily except Sundays. The purchaser of this certificate is authorized to operate five trucks in the same manner, and on the same schedule as heretofore authorized under this certificate (purchased from W. L. and J. E. Mangrum, DBA Mangrum Brothers) as more fully appears in printed map and application filed herein, and which is made a part hereof."

We think that these certificates, considered either alone or in connection with the applications and exhibits, authorized the owners to serve the town of McKinney. McKinney is named in each certificate as a town on the highway over which the owners were authorized to operate. As the statute does not prescribe that the certificate shall designate this or that town on the route to be served, we think it follows that, unless expressly or by necessary implication limited, owners of certificates are authorized to serve all towns and points on the designated route. The certificates under consideration not being limited, we think, implied authority necessarily existed authorizing the owners to serve all towns and points on the designated portion of the highways. If this be not true, the authority to operate motor vehicles over a named highway, without the corresponding right to serve all towns and points on the route, unless restricted, would be an empty and profitless privilege.

A certificate phrased in identical language was under construction in Railroad Commission v. Universal, etc., Co., 86 S.W.(2d) 250, 251, by the Austin Court of Civil Appeals. There the right of the owner of the certificate to serve the town of Corpus Christi was under consideration. The certificate, as originally issued, authorized service from San Angelo to Brownsville, but was subsequently amended so as to include the town of Corpus Christi; reciting that the same authorized operations via Corpus Christi to Brownsville, the court said: "Under these circumstances, we think it is clear that, under the permit granted to Cornelius, he was authorized to serve Corpus Christi on his route." So, we conclude that these certificates, whether considered alone or in connection with the entire record, clearly authorized appellees to serve the town of McKinney.

Having reached this conclusion, it necessarily follows that, in our opinion, the conduct of defendants in denying the owners of these certificates the right, clearly granted, to serve the town of McKinney, and the unauthorized interference with the exercise of such right, constituted a serious and damaging interference with the business of these carriers, inflicting upon them injuries and damages, for which we think it apparent that no adequate remedy at law existed.

The doctrine that rules this case was announced by the Supreme Court, in City of Austin v. Austin City Cemetery Ass'n, 87 Tex. 330, 28 S.W. 528, 529, 47 Am.St. Rep. 114, where Chief Justice Gaines, speaking for the court, said: "Here the appellee seeks to enjoin the city of Austin from enforcing an ordinance which it claims to be void, and says that, if the enforcement be not restrained, it will result in an irreparable injury. In behalf of the city it is answered that, if the ordinance be invalid, there exists a plain, adequate, and complete remedy at law. It is true that, if the ordinance be void, any one prosecuted under its provisions may have it so declared, either in the original criminal action, or by suing out a writ of habeas corpus. Notwithstanding this fact it is clear to us, without the statement of the conclusion by the court of civil appeals, that the effect of the ordinance is such that, if its enforcement be not restrained, it may result in a total destruction of the value of appellee's property for the purpose for which it was acquired. * * * No one, we apprehend, without some considerable inducement, will do an act which may cause him to be arrested and prosecuted, however clear he might be in his own mind that the act constituted no violation of the criminal law. A criminal prosecution is unpleasant to all people who have due respect for the law, and almost necessarily involves inconvenience and expense. As long as the ordinance remains undisturbed, it acts in terrorem." Also, see Hurt v. Oak Downs (Tex.Civ.App.) 85 S.W.(2d) 294, 296, and authorities there cited.

Finding no error in the action of the court in issuing the temporary writ of injunction, its judgment is affirmed.

Affirmed.