**VICTORY TRUCK LINE, Inc., et al. v. RAILROAD COMMISSION et al.**

No. 9702.

Court of Civil Appeals of Texas. Austin.

Dec. 17, 1947.

Rehearing Denied Dec. 29, 1947.

Adrian A. Spears, of San Antonio, Looney & Clark, of Austin, for appellants.

Price Daniel, Atty. Gen., and James D. Smullen and Charles D. Mathews, Asst. Attys. Gen., for appellee R. R. Commission.

Smith, Rotsch & Steakley, of Austin, for Common Carrier Truck Lines, appellee.

Rawlings, Sayers & Scurlock, of Fort Worth, for Red Arrow Freight Lines, appellee.

Austin L. Hatchell, of Austin, for Gulf, C. & S. F. Ry. Co. et al., appellees.

Frank Brooks, of Dallas, for East Texas Motor Freight Lines and Southern Express Co., appellees.

McCLENDON, Chief Justice.

Appeal from an interlocutory order denying a temporary injunction pending hearing on the merits. The suit was by Victory (Victory Truck Line, Inc.) against the Commission (Railroad Commission of Texas and its members) to enjoin interference with its operation under previous Commission authorization, as a motor carrier for hire over the highways of Texas, only under government bills of lading of war materials, etc., between establishments in Texas operated by the army and navy. See Victory Truck Line v. Red Arrow Freight Lines, Tex.Civ.App., 186 S.W.2d 98, error refused W.M. Five other motor carriers, operating under like authorization and concededly circumstanced in every material respect similarly to the Victory, intervened as parties plaintiff and appellant. They will not be further referred to, but the holdings and judgment herein will be determinative of their rights herein. Several rail and motor carriers, competitors of appellants, have intervened as parties defendant. In order to a clear conception of the issues which the appeal presents, as we glean them from the record, the briefs and the oral arguments, we make the following statement of the salient facts, none of which is disputed:

September 16, 1943, the Commission promulgated its General Order No. 70, reading:

"The Railroad Commission of Texas, to provide lawful and necessary transportation facilities for the promotion and continuance of the War effort, has, since the beginning of the present World Conflict, granted numerous certificates and permits to various parties, corporations, and firms, to engage in the transportation of commodities for hire to and from U. S. Army Camps, Air Bases, defense projects, government establishments, cities, communities, and business firms engaged in war industries.

"All of these certificates have been granted upon a showing of an increase in transportation for vital war needs, and an inadequacy of an existing service based upon war time demands, and not upon a showing of public convenience and necessity as such term is so defined during normal peace times.

"All of the above certificates based upon such war emergency have contained the following clause:

"'The Commission retains jurisdiction in this case with authority to issue further orders amending, cancelling or suspending the authority herein granted when the conditions under which it was granted no longer justify the authority.' or a similar clause.

"It was, and is, the intention of the Commission in inserting the above mentioned clause in such certificates and permits to limit the certificates and permits and the operating rights granted thereunder for a period of time not to exceed the transportation emergency caused by the War.

"The Commission is of the opinion that the transportation emergency brought about by World War II will not exist for a period longer than six months beyond the cessation of hostilities between the United Nations and the Axis Powers.

"The Commission is of the opinion that all of the certificates and permits issued by it, which contain the above mentioned clause, or a similar clause, should expire and become null and void six months after the expiration of World War II, and that, therefore, the following general order should be entered:

"It is ordered by the Railroad Commission of Texas that all certificates and permits heretofore granted by it, which contain the following or a similar, restrictive clause,

"'The Commission retains jurisdiction in this case with authority to issue further order amending, cancelling, or suspending, the authority herein granted when the conditions under which it was granted no longer justify the authority,'

shall automatically expire and become null and void and cancelled six months after the termination of hostilities between the United States and both Germany and Japan, and that any rights, privileges, or benefits, held or claimed under such certificates or permits shall become null and void at the expiration of such time.

"However, it is further ordered by the Commission that any holder of such certificate or permit may file at any time after

termination of hostilities, and before the expiration date of such certificates as herein set out, an application for a permanent certificate or permit co-extensive with that under which he is now operating. The Commission shall then set such application for public hearing and shall determine from the evidence adduced at such hearing if public convenience and necessity demand and require the continuation of the service. If the Commission so finds, it shall enter its order to such effect and shall issue to applicant a permanent certificate of convenience and necessity or a permit. If the Commission be of the opinion that public convenience and necessity does not demand the continuation of such service, then it shall enter its order denying such application and applicant's certificate or permit and any rights thereunder shall expire and become null and void in accordance with the terms of this order.

"It is further ordered by the Commission that this order shall become a part of and it is hereby incorporated in any certificate or permit heretofore issued by the Commission which contains the above mentioned clause."

Prior to this general order, the Commission, on November 2, 1942, granted to Victory, without notice or hearing, "temporary authority to operate a contract carrier motor carrier service." This was followed by order of March 10, 1943, cancelling the prior authority, and granting "temporary authority to operate a limited common carrier motor carrier service." Since we deem the recitations 'of this order, which are identical with those of the prior order, pertinent to the issues before us, its full text is copied in a footnote.[1] The application upon which this temporary order was passed, was heard September 13, 1943 (2 days prior to General Order 70), after stat-

[1] "Whereas, the War Department is given power under the Federal Constitution and the laws passed in pursuance thereof to make war; and, by implication, thereunder, the power to get ready to make war,—all State Constitutions and all State Laws to the contrary notwithstanding; and

"Whereas, the members of this Commission as required by the Federal Constitution and as required by the State Constitution and State Laws, have, in effect, taken an oath to preserve, protect and defend the Federal Constitution and the laws passed in pursuance thereof; and

"Whereas, there now exists a grave national emergency and danger requiring the War Department to make great haste in perfecting the National Defense; and, the War Department is now actively and diligently engaged in perfecting the National Defense, including the training of a large army; and, in that connection, is utilizing the service of 'For Hire' motor carriers which use the highways of Texas under the jurisdiction and control of this Commission,—especially are such services required in moving commodities hereinafter particularly described which are necessary in the perfecting of National Defense; and

"Whereas, Victory Truck Lines, Inc., San Antonio, Texas, has filed an application seeking authority to operate a limited common carrier motor carrier service in the transportation of goods, merchandise, arms, ammunition, supplies

and equipment for the U. S. Government from any U. S. Army post, depots, warehouses, canteens, sites and exchanges to any point used or occupied by the U. S. Army in the State of Texas, and, as more fully set out in said application.

"Whereas, The Railroad Commission of Texas has been advised by the proper administrative authority of the Federal Government that an emergency now exists for the transportation of the Commodities sought to be transported and that the granting of this application is necessarily in the interest of National Defense; and

"Whereas, The Railroad Commission of Texas finds that it is necessary that the applicant be granted temporary authority to transport the said products immediately. This temporary authority is granted without notice and hearing and remains effective only until a hearing is held as provided by law.

"Whereas, the Judge Advocate General of the United States Army at Washington has rendered a legal opinion to the effect as this Commission construed said opinion, that State Laws and State Rules covering such motor carriers need not necessarily be respected by the War Department is, as and when said Department concludes that said Laws and Rules are interfering with or impeding the perfecting of the National Defense; and

"Whereas, this Commission has no desire to interfere with or impede the National Defense; but, on the contrary, is extremely anxious to cooperate with the

utory notice, and was granted November 15, 1943. Under this order what is headed, "Limited Common Carrier Motor Carrier's Permanent Certificate of Convenience and Necessity," No. 3493, dated November 19, 1943, was issued.

This certificate and the order granting it contained the following:

"This authority is granted only for the duration of World War II and six months thereafter, and the Commission retains jurisdiction in this cause with authority to enter further orders cancelling, suspending, or amending the authority herein granted when the conditions under which it was granted no longer justify the authority."

The validity of this order was upheld in the Victory case, above (opinion by the late Justice Baugh of this court), *not* however, upon the statutory findings of public convenience and necessity required by Art. 911b, Vernon's Ann.Civ.St., but *only* as a war emergency necessity and a finding of such under the general authority of Sec. 4(d) of that Article, "to supervise and regulate motor carriers in all matters whether specifically mentioned herein or not," etc.—in effect a motor carrier general welfare clause. The opinion further held that the authorization partook more of the nature of a contract carrier than of other statutory designations; but that "The nomenclature used by the Commission in designating the license or permission issued to applicant in the order attacked is not of controlling importance."

October 3, 1945, the Commission issued the following:

"Notice to All Motor Bus Companies, Common Carrier Motor Carriers, Specialized Motor Carriers, Motor Carriers and Contract Carrier Motor Carriers Regarding Termination of Temporary Emergency Permits Issued to Meet the War Time Emergency Needs in Motor Transport in the State of Texas.

"Our orders stated that these temporary permits were issued for the Duration of the War and six months thereafter. The final surrender of Japan came on 2 September 1945. This date was followed by cancellation of war contracts, stoppage of war freight movements, and of redeployment of troops and cancellation of most war time controls by the office of Defense Transportation. It is, therefore, clear, in the opin-

---

War Department in every respect and detail in this time of crisis and is extremely anxious to help and assist in making the Nation ready for War.

"Now, therefore, it is considered, ordered, adjudged and decreed by the Railroad Commission of Texas

"That the application of Victory Truck Lines, Majestic Bldg., San Antonio, Texas, be, and the same is hereby in all things granted as follows:

"Applicant is granted temporary authority to operate a limited common carrier motor carrier service in the transportation of goods, merchandise, arms, ammunition, supplies and equipment for the U. S. Government from any U. S. Army stores, depots, warehouses, canteens, sites and exchanges to any point used or occupied by the U. S. Army in the State of Texas, using in said operation six (6) trucks.

"It is further ordered that temporary emergency contract carrier authority granted the Victory Truck Line, Inc., on November 2, 1942, Be, and the same is hereby in all things *cancelled*.

"It is further ordered that the Motor Transportation Division of this Commis-

sion shall proceed with all diligence to receive, to file, to give statutory notice of, to hear and to present to this Commission for its decision, the application of Victory Truck Lines, Inc., San Antonio, Texas, to obtain authority in the manner prescribed by law.

"The Commission finds as true and correct all of the facts set forth in the foregoing paragraphs of this order, to the same extent as if here re-written and found as true and correct at this point.

"It is further ordered by the Commission that this order be construed only as a temporary and not a final one and reserves full and complete jurisdiction over the same and any and all interested parties are hereby given and granted full and complete permission to apply at the foot of this order for such relief and for such further orders and for such change and amendments herein to which they may show themselves entitled.

"It is expressly understood that the Commission retains jurisdiction in this case with authority to issue such further orders amending, cancelling or suspending this authority when the conditions on which granted no longer justify the authority."

ion of the Texas Railroad Commission, that the date September 2, 1945, was the end of hostilities and the end of the duration. Six months thereafter would end on March 2, 1946, and therefore all temporary permits and certificates will come to an end on that date unless made permanent after notice and hearing and proof of public convenience and necessity made and so found by the Texas Railroad Commission prior to March 2, 1946."

Then followed the full text of General Order No. 70, and:

"The Commission has not at this time determined the time and place for the hearing of these applications, but all carriers holding certificates or permits or orders granting same, containing such or similar clause and who may desire to have their certificates made permanent, are hereby instructed to file their applications, together with the necessary filing fees, at the earliest possible date. If any holders of temporary war time permits do not desire to apply for permanent authority, they should disregard this notice."

December 10, 1945, Victory filed its application "for permanent authority to operate as aforesaid, in compliance with the terms of said notice"; stating that it was desirous of making its equipment available as long as the Government cared to use it, and requested "that the Commission make it possible for it to do this by making its certificate #3493, authorizing it to handle commodities for the * * * Government, permanent."

April 9, 1946, after due notice and hearing, the Commission promulgated its order thereon, stating that the application "to make permanent Limited Common Carrier Certificate No. 3493, Be and the same is hereby *granted*." It is ordered further that the authority continue in no event longer than one year from that date, "at which time this authority shall automatically expire." All other requested authority not therein granted was "expressly denied." Under this order and the same certificate number 3493 what is headed "Amended Limited Common Carrier's Permanent Certificate of Convenience and Necessity," was issued April 17, 1946. Victory accepted

and operated under this certificate. In order to have a common terminal date for all authorizations of this character, the Commission, of its own motion, on March 15, 1947, by general order extended all such authorizations to September 20, 1947. August 30, 1947, the Commission overruled a motion filed by Victory August 11, 1947, "to extend the operating authority of Common Carrier Certificate 3493 from its present fixed expiration of September 20, 1947." This application was denied August 30, 1947, the order reciting the terms of the March 15, 1947, general order, and holding it to be a final order and that "the Commission is without any authority to extend that time or to grant a new certificate except upon the public hearing as provided in the Motor Carrier Act." September 4, 1947, Victory filed application for "Limited Common Carrier Motor Carrier" certificate, in which it asked that its existing authorization be extended indefinitely, or in any event for one year from June 30, 1947. This application was "in all things denied," October 15, 1947; but exceptions thereto were authorized in accordance with General Order No. 79 of September 18, 1946. Motion to hold in abeyance the order of October 15, 1947, denying the right to continue to operate until the expiration of World War II and exceptions thereto, were duly filed and denied November 10, 1947, in a consolidated order affecting all like carriers before the Commission.

Plaintiff's verified original petition was filed November 11, 1947, in which it sought both a permanent injunction and a temporary one to operate pending decision upon the merits. It is from the denial of the latter that this appeal is taken.

As we gather from the petition the basis of Victory's suit is its assertion that all orders subsequently to that of November 15, 1943, originally granting its "Limited * * * Permanent Certificate * * *" No. 3493 "are unjust, unreasonable, unlawful and arbitrary and are wholly void" as to it, in that:

"1) The Commission has no authority to determine the date of the expiration of World War II, and has not undertaken to amend, cancel or suspend Plaintiff's operation, in the manner prescribed by law, and

"2) that no evidence has been adduced before the Commission and no facts exist now or at any time material herein, from which the Commission has concluded, nor have they heard any evidence, or had a hearing for the purpose of hearing evidence bearing thereon that there is not a continuing need by the War Department for the service of Plaintiff, and said orders are therefore void and unenforcible."

There is a further allegation that there is in fact a continuing pressing need for the service by the War Department.

As to the permanent injunction the prayer is to restrain the Commission from enforcing any of its orders affecting the right to operate under Certificate No. 3493 until the expiration of World War II and six months thereafter, subject to the right of the Commission "to amend or cancel the Certificate, as provided by law."

At the hearing for temporary injunction counsel for appellants stated:

" * * * we are not appealing from the order of the Commission denying the permanent certificate. We are seeking to establish that the order of November 15, 1943, is still a valid order * * * and that this is just trying to bring in another law suit that has not been filed. * * *

We are resting on the November 15, 1943, order * * * which we say is still in full force and effect."

█ It is evident from the briefs and argument that no little confusion has arisen from the fact that the terms "temporary," "permanent," "Limited permanent" in the various orders and certificates are manifestly not used with uniform significance. A contributing factor seems to be the use of printed "peace time" forms in relation to "war time" authorizations. As said in Victory Truck Line v. Red Arrow Freight Lines, [186 S.W.2d 101] above, "The nomenclature used by the Commission * * * is not of controlling importance." We shall not attempt to follow the order or course of reasoning in the briefs; but will dispose of the several contentions urged by giving our interpretation of the various authorizations of the Commission and their effect.

It should be kept in mind that every authorization involved in this litigation, and every order, notice or what not of the Commission in relation thereto, was in the exercise of its assumed "war time" authority upheld in the Victory case, and not of any "peace time" power delegated to it by the Legislature.

Much of appellants' brief is devoted to discussion of authorities supporting the proposition that only the Federal Government, acting through proper channels, can terminate World War II. That is of course correct; and a state of war still exists between this Government and those of Germany and Japan, as well as such others with whom we have not concluded treaties of peace. General Order 70 provided that all "heretobefore granted" authority should automatically expire six months after the "termination of hostilities" between our Government and both Japan and Germany. Victory contends that this order does not apply to its certificate No. 3493, as it was granted after that order was passed; but that it is governed by the provisions of the order of November 15, 1943, which granted it "only for the duration of World War II and six months thereafter." We do not concur in this view. But even so, the Commission expressly retained jurisdiction over the authorization to cancel, suspend or amend it.

█ Victory contends that the order styled notice of October 3, 1945, was void because: 1) it was issued without notice and hearing; and 2) it was an attempt on the part of the Commission to terminate World War II. This "notice" was tantamount to and in effect a general order, as to which notice and hearing are not essential; the remedy of an aggrieved party being to apply to the Commission for relief. Greer v. Railroad Commission, Tex.Civ.App., 117 S.W.2d 142, error dismissed c. j. Conceding, arguendo, that the term "End of World War II and six months thereafter," as used in the order of November 15, 1943, and the certificate 3493 issued thereunder, is used in the sense contended for by Victory; nevertheless the date thereby fixed marked only the ultimate limit of the life of the authorization. It is plain that the term "duration of the war" in the "notice" of October 3, 1945, was not used in that sense but in the sense (as interpreted by

Victory in its application of December 10, 1945) that "the Commission was considering September 2, 1945, *for all practical purposes pertinent hereto,* as the end of hostilities and the end of the duration of World War II." (Emphasis added.) It is clear that the Commission has not presumed in any sense or degree to usurp the exclusive prerogative of the Federal Government to terminate the duration of a state of war. It was not the mere legal existence of that state which furnished the basis of authority under which the Commission acted. It was the emergency then existing created by the urgent necessity incident to the effectual prosecution of the war, as that emergency had relation to the use of the public highways in Texas, which furnished such basis. The Commission had the same power to determine the end of the duration of that emergency as it had originally to determine its existence in the first instance as a basis for its action. It is evident that the Commission recognized throughout that it was exercising an authority which it did not have under "peace time" conditions; and that as soon as such "war time" emergency conditions ended there must be a return to "peace time" operations. Upon the termination of the declared "emergency" General Order No. 70, as well as the "Notice" of October 3, 1945, provided for the continuance of the authority only upon application for permanent certificate and (as we interpret them) the factual showing of the "peace time" public convenience and necessity required under Art. 911b. General Order 70 recited in broad outline the conditions which created the "emergency" under which the Commission acted, and the "notice" of October 3, 1945, recited those which terminated that "emergency." It may well be that there is still a need by the War Department for this service and that such need exists as an aftermath result of actual combat warfare. But it does not follow that such need is paramount to the interests of the public generally in the highways, or to the "peace time" conditions required under Art. 911b. The Commission extended the several authorizations it had granted by various orders subsequently to that of October 3, 1945, to November 10, 1947, as

the final date of expiration. We attach no importance to the fact that succeeding certificates were granted and issued from time to time. The authorization is the substance of the thing dealt with and it may be conceded to have been a continuing one from the date of the first "temporary" certificate, granted without notice or hearing, to the termination of the last extension thereof. In its order of August 30, 1947, the Commission stated it had no authority to grant further authorization "except upon public hearing provided in the Motor Carrier Act." This constituted a finding that the conditions which formed the essential basis of its authorizations no longer existed.

We hold that all of the orders, "notices" and other actions of the Commission which appellants attack are valid, and this regardless of whether the attack be treated as a direct one in the nature of a statutory appeal therefrom. In a supplemental brief appellants contend that if the "notice" of October 3, 1945, be treated as a general order, notice and hearing of which was not required, their several subsequent applications constituted the application to the Commission for relief from that order required by the Greer case. We accept this view. Final termination of the war emergency authorizations created by the Commission was a matter solely within its discretion. Not only did it have that discretion but there was a corresponding duty to exercise it whenever the emergency which supported its authorizations was at an end, and general conditions warranted return to peace time regulation of motor transportation in the State. The matters recited in the "notice" of October 3, 1945, were such as everyone, including the courts, should take cognizance of. The Commission was charged with knowledge of all conditions generally affecting motor transportation throughout the State, including those relating to the continuation of its exercise of the war emergency powers in issue. Appellants had ample notice of the exercise of this power to terminate these authorizations, if notice thereof was required.

The Commission had abundant factual basis for the exercise of its discretionary

powers, no abuse whereof is shown; and its final action therein is not subject to judicial review.

We deem it unnecessary to discuss the issues of "probable cause" and "preservation of status quo" presented by appellants in support of their asserted right to a temporary injunction to prevent "irreparable injury" pending decision upon the merits. Under our above holdings they have not shown, even prima facie, the existence of a cause of action,—an essential showing to a temporary writ.

The order appealed from is affirmed as to all appellants and at their cost. No right to permanent certificates under general law is herein involved or dealt with.

The trial court, in denying the temporary injunction, continued a previously granted restraining order to December 5, 1947. On that date we issued like restraining orders in favor of each appellant, pending decision in this court upon the merits of this appeal. The latter are hereby continued in effect until twelve o'clock noon, January 10, 1948, at which hour they shall automatically terminate, unless by that hour the respective appellants have filed in this court applications for writs of error to the Supreme Court. In which latter event such stay orders shall be continued in effect in favor of such appellants as shall within that time file such applications, subject to the orders of the Supreme Court.

Affirmed.