**Burke W. INMAN et al., Appellants,**

**v.**

**RAILROAD COMMISSION of Texas et al., Appellees.**

**No. 11820.**

Court of Civil Appeals of Texas, Austin.

March 10, 1971.

Rehearing Denied March 31, 1971.

Lanham & Hatchell, Joe T. Lanham, Austin, for appellants.

Crawford C. Martin, Atty. Gen., Nola White, 1st Asst. Atty. Gen., Alfred Walker, Executive Asst. Atty. Gen., James H. Cowden, Thomas F. Sedberry, Asst. Attys. Gen., Austin, Ewers, Toothaker, Ewers, Abbot, Evins & Talbot, Joe B. Evins, McAllen, for appellees.

O'QUINN, Justice.

Burke W. Inman and eight other special motor carriers for hire filed separate suits in district court of Travis County to enjoin the conduct of trucking operations pursuant to certain orders of the Railroad Commission of Texas and for judgment declaring the orders invalid.

The suits arose from action of the Railroad Commission granting authority to nine of twenty-eight applicants to transport agricultural products in their natural state between various points in Texas. All plaintiffs filed protests with respect to the applications and participated in the consolidated hearings conducted before the examiner for the Commission.

On appeal the nine plaintiffs are appellants, and the Railroad Commission, together with the nine motor carriers obtaining authority for such trucking privileges, are appellees.

The trial court, upon findings that plaintiffs had not exhausted their administrative remedies and that the Commission orders complained of were not final, sustained pleas in abatement, filed by the Commission and the motor carrier appellees, and ordered dismissal of plaintiffs' suits.

The court provided in the judgment that "This dismissal is without prejudice to Plaintiffs' right to file suit with respect to any order hereafter issued by Defendant Railroad Commission with respect to the matters involved herein." In addition, the trial court ordered that " * * * pending further action by * * * [the] Commission causing said orders to become final, that said Commission recall and recollect all operating certificates, vehicle cab cards and plates and other operating papers issued to * * * " the nine motor carrier appellees.

The nine motor carrier appellees and nineteen other applicants initially applied to the Railroad Commission for the same type of trucking authority. The nine appellants and other interested carriers filed protests with the Commission, and the applications were then consolidated for hearing over the objection of appellants.

Following completion of the hearing the Hearing Examiner for the Commission prepared and issued a report dated March 20, 1970. The examiner found inadequacies of services offered by appellants and other protesting carriers and recommended that certain named applicants, who are the nine motor carrier appellees on appeal, be granted authority to transport agricultural products in their natural state, limited "to fresh fruits, fresh vegetables and melons," but restricted from transporting cooked, bottled, hermetically sealed or frozen products. The examiner further recommended that all authority not expressly granted be expressly denied. Attached to the report was a recommended order, naming each of the nine

motor carrier appellees as recipients of the indicated authority, for adoption or rejection by the Commission.

Appellants timely filed with the Commission their "Exceptions to the Examiner's Recommended Report and Order * * *" in which were specified in detail eight objections and exceptions to matters contained in the report.

Exceptions were also filed with the Commission by sixteen applicants whose applications the examiner had recommended be denied, urging the Commission to grant all applications. These applicants also requested the Commission to "* * * adopt and accept the Examiner's Report in its entirety * * * [and] to grant, in addition to the nine applicants recommended by the Examiner, all applications as filed."

The Commission on May 25, 1970, issued separate final orders granting each of the nine motor carrier appellees the authority recommended by the examiner, and in the form of order recommended by the examiner, except for the additional provision that, "All exceptions are hereby overruled, except that all transportation granted shall be conducted in accordance with Sec. 2.9 motor carrier regulations, limiting points of origin to points of production, packing sheds, processing plants and concentration points."

That portion of the Commission's order limiting points of origin was in effect a grant of appellants' exception Number I filed with the Commission.

Upon publication of its final orders, the Commission began issuing the papers necessary for the nine motor carrier appellees to commence operations pursuant to the grants of authority contained in the orders. As each applicant qualified, by filing the required insurance and paying prescribed fees, the Commission caused a certificate, cab cards, and plates to be furnished so that actual operations could be commenced by the motor carrier.

Appellants then filed their lawsuits in district court of Travis County seeking to enjoin the Commission and the nine motor carrier appellees and to have the order of the Commission declared invalid.

Appellees take the position that each of the nine recommended orders accompanying the report of the examiner contained a vital error. These orders, appellees urge, "* * did not contain legally acceptable findings of fact as required by Section 5a(d), Article 911b, Vernon's Ann.Civ.St., as enunciated by the Supreme Court in Miller v. Railroad Commission, 363 S.W.2d 244 (Tex.Sup. 1962)." Appellees assert: "The error was correctable through the incorporation of the recommended report into the orders as is required by Commission's Rules 48 and 49."

Because the defect of the examiner's recommended orders was carried over into the Commission's final orders, without objection by appellants to bring the fault to the attention of the Commission, it is urged that appellants failed to exhaust their administrative remedies before filing suit.

Appellees seek affirmance of the trial court's action sustaining pleas in abatement and dismissing the suits on two grounds: (1) appellants failed to exhaust their administrative remedies before the Commission by not objecting to the form of the orders and (2) the orders of the Commission were not final as defined by the Commission's rules.

Appellees rely upon the decision of this Court in Greer v. Railroad Commission, 117 S.W.2d 142 (Tex.Civ.App.1938, writ dism.) in urging that appellants failed to exhaust their administrative remedies before the Commission. In that case the order under attack was a general order of the Commission issued without notice or hearing. This Court held that "notice or hearing were not essential to the validity of the order * * *." Greer, holder of a special commodity carrier permit, after finding that the general order placed limita-

tions on his operations, brought suit without applying to the Commission for redress. This Court held that "* * * Art. 911b, sec. 20, specifically accords judicial review to any interested aggrieved party 'after failing to get relief from the Commission.' By this language application to the Commission for such relief is manifestly made a prerequisite to such review." Greer's suit was dismissed without prejudice.

We are unable to agree with appellees that the holding in Greer is controlling in the case before us.

The opinion in Greer was written by Chief Justice McClendon who in two subsequent cases had occasion to state succinctly the rule of that case.

In Highway Transp. Co. v. Southwestern Greyhound, 124 S.W.2d 433 (Tex.Civ.App. 1939, writ ref.) it was said: "In the recent case of Greer * * * we held that in the absence of statutory requirement, notice and hearing were not essential to Commission orders of a general nature, affecting alike all carriers or all of a class; and that application to the Commission for relief was prerequisite to the right of appeal." (124 S.W.2d 433, 435, col. 1)

Again, in Victory Truck Line v. Railroad Commission, 207 S.W.2d 210 (Tex.Civ.App. 1947, writ ref. n. r. e.), it was observed: "Victory [Truck Line] contends that the order styled notice of October 3, 1945, was void because * * * it was issued without notice and hearing * * * This 'notice' was tantamount to and in effect a general order, as to which notice and hearing are not essential; the remedy of an aggrieved party being to apply to the Commission for relief. Greer v. Railroad Commission * * *." (207 S.W.2d 210, 215, col. 2)

We deem it apparent that in deciding Greer this Court limited the rule there stated to the facts of that case in which the aggrieved carrier had not participated in any of the Commission's administrative proceedings, leading up to issuance of the general order, before bringing suit for redress.

Prior to Greer, this Court, Chief Justice McClendon there also speaking for the Court, had decided Smith v. Wald Transfer and Storage Co., 97 S.W.2d 991 (Tex.Civ. App.1936, writ dism.) involving the granting of a specific common carrier certificate to use the highways. There it was said:

"The granting of a privilege to use the highways for commercial purposes partakes of the nature of ratemaking to the extent, at least, that its operation is prospective only. An order granting this permission is immediately effective, and the applicant is entitled as a matter of right to operate under it upon compliance with the requirements regarding fees and insurance. Right of review of the order in the courts is expressly given by statute. * *" (97 S.W.2d 991, 995, col. 2)

This Court further held that the right of review and the potential jurisdiction of the courts immediately attach upon the order becoming final, and that to hold that the Commission still had the right of review upon rehearing would be to hold that the jurisdiction of the Commission and the courts was concurrent.

The facts of Smith v. Wald, like the facts of the cause before us, are essentially different from the facts of Greer. This Court said in Smith v. Wald:

"The commission is authorized to act only after notice and hearing; and its final orders presuppose its final deliberate judgment arrived at by exercising a like degree of fairness and impartiality in accomplishing the objectives of the statutes as that imposed upon the courts. If it were given the right thereafter to review and set aside such orders, the administration of this important governmental function would be fraught with uncertainty and inconvenience. There would be no way of knowing with reasonable certainty when the commission's jurisdiction had terminated and its orders had effectively become final." (97 S.W.2d 991, 996, col. 2)

In the case at bar appellants entered their protests, participated in hearings, and

timely filed clear and explicit objections and exceptions to the examiner's report to the Commission. Sixteen unsuccessful applicants also filed exceptions and expressly requested the Commission to adopt the findings of the examiner. The Commission granted one of appellants' exceptions and amended accordingly the orders recommended by the examiner. The Commission did not adopt the findings of the examiner but issued its orders and immediately set in motion procedures by which the nine motor carrier appellees began to obtain certificates and start operations after meeting requirements of insurance and payment of fees. A qualified Commission employe testified in district court from files of the Commission that within 10 to 15 days following the orders of May 25, 1970, some of the carriers had qualified and that personnel of the Commission were treating the orders as final. It is obvious that the nine motor carrier appellees were likewise considering the orders as final and were beginning to operate under the orders.

Appellees urge that under rules of the Commission, governing practice and procedure for the transportation division, appellants failed to exhaust their administrative remedies, even after issuance of the orders of May 25, by not asking, presumably, for a rehearing and pointing out that adequate findings had not been incorporated in the orders.

Rule 50, governing proceedings after Commission orders, provides: "In any proceeding where the order of the Commission is contrary to the ultimate conclusions of the examiner's report and recommended order, and only in such proceedings, a petition for reconsideration may be filed within twenty days after the service upon the parties of the Commission's final order * * *"

Inasmuch as the orders of the Commission were not contrary to the ultimate conclusions of the examiner's report and recommended order, Rule 50 was inapplicable and did not afford appellants the right, nor impose upon them the duty, to seek rehearing or reconsideration.

In Thomas v. Stanolind Oil & Gas Co., 188 S.W.2d 418 (Tex.Civ.App.1945, rev. on other grounds 145 Tex. 270, 198 S.W.2d 420) this Court reaffirmed the rule of Smith v. Wald, and said: " * * * we are clear in the view that where such orders are prospective in character, are immediately effective, are put in operation by the parties in whose favor they are made, and their operation infringes upon the rights of interested parties; the right of appeal in favor of the latter at once arises. This holding was made in Smith v. Wald * * where the question was discussed at some length * * *." (188 S.W.2d 418, 422, col. 1)

In that case a motion for rehearing had been filed with the Commission but the Commission had not acted on it. After the parties adversely affected by the Commission's orders had appealed to the district court the parties favored by the orders filed a plea to the jurisdiction.

This Court said: " * * * under every applicable equitable consideration, a party who actually operates under such order to his own advantage and to the disadvantage of another, should be held estopped to assert the non-finality of the order in defeat of right of the injured party to the only relief available to him." (188 S.W.2d 418, 422, col. 2)

Continuing further, this Court observed: "It may be seriously questioned whether a procedural rule of the Commission could be supported as reasonable, the effect of which would be to defeat the right of appeal of an adversely interested party from an order which was immediately effective, was put in effect and operated under by the party in whose favor made, and thereby immediately and continuously deleteriously affected the rights of such adverse party." (188 S.W.2d 418, 422, col. 2)

The ultimate issue in Thomas v. Stanolind was decided by the Supreme Court contrary

**900**

to the holding of this Court,[1] but the Supreme Court expressly approved the holding of this Court with respect to the effect of the motion for rehearing pending before the Commission: "We approve the holding of the Court of Civil Appeals with reference to the refusal of the trial court to sustain a plea to the jurisdiction predicated upon the pendency of a motion for a rehearing." (198 S.W.2d 420, 423, col. 2)

■ Appellees rely upon Commission Rules 48 and 49 to show a lack of finality in the orders of May 25, 1970. Rule 48 provides that all orders of the Commission "shall incorporate the findings of fact and ultimate conclusions required by law, either in the body of the order or by reference to the examiner's report and recommended order." Rule 49 deals with "administrative finality" and provides that such finality obtains when the Commission adopts the examiner's report and recommended order, or when a petition for reconsideration is allowed or overruled by operation of law. Rule 49 also provides: "No certificate or permit shall be issued in any proceeding until administrative finality is attained."

The Commission failed to adopt the examiner's report but after entering its own order, substantially as recommended by the examiner, proceeded to issue certificates as though administrative finality had been attained. Thus the Commission failed to observe its own rules and now seeks to rely upon procedural rules to show lack of finality and to defeat the right of appeal of adversely interested parties whose rights are prejudiced by the orders made immediately effective by the Commission and acted upon by the parties favored by the orders.

We hold that the orders of May 25, 1970, were final orders. The Commission lost jurisdiction when the orders became final, and the district court's potential jurisdiction attached for the sole function of determining validity of the orders. In view of the

disposition we make of this appeal, by which we reverse judgment of the trial court and remand the cause for further proceedings, it should be observed that it is settled law that when a final order of the Commission is attacked by appeal, the Commission loses jurisdiction over the order and is without authority to take any action thereon while the suit is pending. Railroad Commission of Texas v. North Texas Coach Co., 92 S.W.2d 268 (Tex.Civ.App. 1936, no writ), and cases there cited.

It was error for the trial court to sustain appellees' pleas in abatement and to refuse to proceed with trial on the merits.

The judgment of the trial court is reversed and the cause is remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

---

1. The ultimate issues in this case were the same decided by the Supreme Court, on the same date, in Trapp v. Shell Oil Co., 145 Tex. 323, 198 S.W.2d 424 (1946).